THE MAYOR AND COMMON COUNCIL OF THE CITY OF
NEWARK v. HENRY W. TUNIS.

Argued November 2, 1910—Decided February 27, 1911.

1. In taxing the shares of a national bank, the true value which is
   the basis of the assessment is under ordinary and normal condi-
   tions, their exchangeable value in the market and not their book
   or liquidation value.
2. In assessing shares of a national bank, the total valuation of all
   the shares at their true value is to be ascertained; and from
   this is to be deducted the amount of the assessment on real
   estate and such other items as the statute permits to be de-
   ducted; each share is assessable upon its *pro rata* of the balance.
3. Section 18 of the Tax act (*Pamph. L.* 1903, *p.* 394) provides
   that every trust company shall be assessed in the taxing district
   where its office is situated, upon the full amount of its capital
   stock paid in and accumulated surplus. *Held,* that it is assess-
   able upon the true value of its stock.
4. Section 17 of the Tax act (*Pamph. L.* 1903, *p.* 394), with the
   modifications of the act of 1905 (*Pamph. L., p.* 457), does not
   tax shares of national banks at a greater rate than other moneyed
   capital in the hands of individuals.

On *certiorari* to board of equalization of taxes.

Before Justices GARRISON, SWAYZE and VOORHEES.

For the prosecutor, *Herbert Boggs.*

For the defendants, *Robert H. McCarter* (*Arthur F. Egner,*
on his brief) and *John R. Hardin.*

The opinion of the court was delivered by

SWAYZE, J. The Tax act of 1903 evinces an intent to tax
at its true value all property not exempt. Section 2 enacts
that "all property, real and personal, within the jurisdiction
of this state, not expressly exempted by this act, or excluded
from its operation, shall be subject to annual taxation at its
true value under this act." Section 6 requires the assessor,

after examination and inquiry, to determine the full and fair value of each parcel of real property at such price as in his judgment such parcel would sell for at a fair and *bona fide* sale by private contract. Section 12 requires the assessors to ascertain by diligent inquiry and by the oath of persons to be assessed and others the true value of all the personal property. The question presented by this case is in what manner the true value of the shares of stock of a national bank is to be determined. The city insists that the basis for the ascertainment of the amount is the exchange value in the market from which such deductions are to be made as are authorized by section 17 of the act and by the act of 1905 as construed in *Lippincott* v. *Lippincott,* 46 *Vroom* 795. The defendant insists that the basis is the book or liquidation value—the amount which would be payable to each share if the assets of the bank were at once distributed. In this view the defendant was sustained by the board of equalization, whose action is now before us for review.

If we look merely at the language of the act itself, the city's contention seems the proper one. Personal property and real estate are both to be assessed at true value, and a statutory definition is attempted of the expression as used with reference to real estate. It is the price at which the property would sell at a fair and *bona fide* sale by private contract. Unless we are to assume that a different meaning is to be attributed to the words when used in the twelfth section from that expressly given to them in the sixth, true value of personal property must mean market value under ordinary and normal conditions. It can hardly be that an expression which in the second section is applied to both real and personal property without distinction, takes different meanings in section 6 and section 12. This view is sustained by a careful examination of the language of section 17, which provides for the taxation of shares in national banks. We pass for the present the earlier history of the legislation and compare the language of the act with that of its immediate predecessor—the act of 1900. *Pamph. L., p.* 296. The latter provided that the amount of the assessment for the bank's real estate should be

deducted from the assets of the bank in estimating the assessable value of the shares of stock. The revisers, when they came to draw the act of 1903, had the act of 1900 before them; instead of providing that the assessment of the real estate should be deducted from the assets of the bank, the legislature enacted that the deduction should be "from the total valuation of the shares of stock assessed against the stockholders." We shall show in the course of this opinion that the decided cases prior to 1903 had drawn a sharp distinction between the valuation of shares in the hands of stockholders and the valuation of the assets of the bank, the property of the corporation itself. We point out now the marked change in the language between "the assets of said bank," in the act of 1900, and "the total valuation of the shares of stock assessed against the stockholders" in the act of 1903. The act of 1903 was a revision and a clear intention to change the existing law must be manifested before we can infer such a change from the mere fact that different language is used. *Trenton v. Standard Fire Insurance Co.*, 48 *Vroom* 757, 760. In that respect the rule of construction differs from that applicable to a supplement to an act such as was before the court in *Lippincott v. Lippincott*, 46 *Id.* 795. The act of 1900 seems never to have been construed by the courts. Prior to its passage the matter had been controlled by section 23 of the act of 1866. *Gen. Stat.*, *p.* 3299, *pl.* 83. This provided for the deduction of the assessment of real estate of the bank other than the banking house and lot "from the amount of the capital stock and surplus and funded debt, or of the valuable assets of the corporation." By the act of 1891, as construed in *Orange National Bank v. Orange*, 29 *Id.* 45, the assessment of the banking house and lot was also to be deducted. The language of section 23 of the act of 1866, "Capital stock and surplus and funded debt, or of the valuable assets of the corporation." does not differ materially from the words, "the assets of said bank," in the act of 1900. Both expressions, aside from the words "capital stock," point to the property of the bank as a corporation, not to the property of the stockholders in their shares. There was room for a forcible argu-

ment under either act that this language required an ascertainment of the value of the property of the bank as a corporation as the basis for assessment. Strong as the argument may have seemed, the rule was to the contrary. *Stratton* v. *Collins*, 14 *Id.* 562; *Myers* v. *Campbell*, 35 *Id.* 186, 188. These decisions on this point are the logical result of the federal statute under which national banks are taxed. This statute provides only for taxation on the shares of stock in the hands of the stockholders and does not permit taxation of the banks as such, nor their property, assets and franchises, except real estate. *Owensboro National Bank* v. *Owensboro*, 173 *U. S.* 664. Since it is the shares of stock that are taxable, not the assets of the bank, the courts naturally held that it was the value of the shares that was to be ascertained, not the value of the bank's assets; and the value of the shares might include elements of value due to good will, public confidence, prudent management or the possession of property, like government bonds, which were in themselves exempt from taxation. It is enough here to refer to *Mercantile National Bank of New York* v. *Mayor, &c., of New York,* 121 *Id.* 138, in which the earlier cases were exhaustively reviewed, and to *San Francisco National Bank* v. *Dodge,* 197 *Id.* 70, an opinion by the present Chief Justice. Such was the state of the law prior to 1903, and notwithstanding the clear reference in section 23 of the act of 1866, and in the act of 1900, to the assets of the bank itself as the thing from which the value of real estate was to be deducted in estimating the assessable value of the shares, it was the value of the shares themselves that was ascertained, including therein elements of value which were in no sense taxable assets of the bank. The revisers, in 1903, found the law in that state, and what they did was to express in clear and precise language what was ambiguous in the former legislation except as elucidated by the decided cases. The language they adopted was clear and precise; the value of the real property is to be deducted from the total valuation not of the bank's assets but of the shares of stock; and to remove any possible doubt they added the words "assessed against the stockholders." The valuation of shares assessed

against the stockholders might, under the decisions, include elements of value not belonging to the bank as assets and the "total valuation" of the shares would almost certainly be different from the total assets of the bank.

We proceed to consider the arguments urged for a different view. Section 17 of the act of 1903 requires the officers of the bank to give the assessor a statement of the amount of the assets, capital stock and surplus. This is thought to indicate that the legislature meant to limit the assessor to these three elements as the basis of an ascertainment of the true value. Such is not the necessary nor even the probable inference. It is probable that the intention was to compel the bank officers to furnish information which was essential in order to reach the true value with accuracy. True value is not always to be ascertained by the simple method of reference to selling price in the market. Special circumstances may cause the market value to be either higher or lower than the true value. Stock may sell beyond its true value because of a temporary artificial demand due to a corner in the stock; or, in spite of a large defalcation, not yet known to the public. A currency panic, a false rumor, or ignorance of the existence of assets not shown by published statements may cause the stock to sell below its true value. The truth or falsity of some of these circumstances, which unduly exalt or depress the market price, may be tested by a truthful statement of assets, capital stock and surplus. It was therefore quite proper for the legislature to require such information to be furnished to the assessor. By section 17 of the act of 1866, the assessor, in addition to the statement of the bank officers, was authorized to take such other means as might be in his power to ascertain the true amount for which the stockholders should be taxed. This provision is omitted from the act of 1903, and we are asked to infer from this omission that the legislature meant to confine the assessor to the statement of assets, capital and surplus furnished by the bank officers. We are unable to draw this inference in the face of section 14 of the act of 1903, which empowers the assessor to examine under oath any person or officer of a corporation touching the taxable property of

himself or others. The revisers seem to have thought, as we think, that it was unnecessary to repeat this power in section 17. The argument proves too much; for if the assessor can make no inquiry outside the statement of the bank officers, the power to fix the valuation is put in the hands of private persons who may be interested in undervaluing the assets of the bank for the very purpose of depressing the taxable value of the stock. This is contrary to the whole spirit of the Tax act which puts both the power and the responsibility of fixing proper valuations in the hands of the public officials.

The language of section 17 of the act of 1903, repeated in the act of 1905 (*Pamph. L., p.* 457), "total valuation of the shares of stock assessed against the stockholders," makes it necessary to ascertain the true value of each share, and multiply this by the number of shares to ascertain the total valuation from which the deductions are to be made. It is argued that the total value cannot be the market value for the reason that there is no such thing as a market value for the whole of the capital stock of a bank. We are not prepared to concede that there never is a market value for the whole stock, but no doubt the case would be exceptional. The true answer to this argument is that the legislature is contemplating what normally happens. Under the usual circumstances, there is a market value for all the stock that offers. If the argument is valid, the best of investment stocks have no market value since it would be impossible to convert them all into cash at once; and even the total of the deposits in the strongest banks is valueless since the effort to draw all at once would surely fail. What was in the mind of the legislature was the situation that exists in the ordinary ebb and flow of a normal market.

We think, therefore, that upon a proper construction of the Tax act, the true value at which shares of stock in a national bank are required to be assessed is, under ordinary and normal conditions, their exchange value in the market, and not their book or liquidation value; from the total valuation of all the shares there must be made such deductions as the statute permits. We have reached this conclusion by the considerations above presented independent of authority. It is gratifying to

find that we are supported by the adjudged cases. In *Lippincott* v. *Lippincott*, 46 *Vroom* 795, the Chief Justice, speaking for the Court of Errors and Appeals, said (at *p.* 798), referring to the decision in Mechanics National Bank *v.* Baker: "Upon this point we held that trust companies were taxable upon the *market value,* not the par value, of their stock, and that therefore the assessment and imposition upon them was the exact equivalent of that upon national bank stock, and, so, that there was no discrimination against the latter made by our tax laws." The construction has not only the approval of this latest case, but has the merit of age, for in *State* v. *Tunis*, 3 *Zab.* 546, it was held that the actual value of bank stock was its fair market value. The same view is taken in *Massachusetts National Bank of Commerce* v. *New Bedford*, 155 *Mass.* 313. In this case, the market value as a going concern was, owing to a loss of public confidence, less than the book or liquidation value. The New York courts have sustained the same view. *Tradesmen's National Bank* v. *Commissioners*, 69 *N. Y.* 91. Under the California statute, shares of national banks are to be valued at their "full cash value," which is defined as the amount at which they "would be taken for a just debt due from a solvent debtor." The Supreme Court of the United States said: "These words are but synonymous with the requirement that in assessing shares of stock their market value must be the criterion. This is the case, for, eliminating exceptional and extraordinary conditions, giving an abnormal value for the moment to stock, it is apparent that the general market value of stock is its true cash and selling value." The court added that this value "embraced not only the book value of all the assets of the corporation, but the good will, the dividend earning power, the ability with which the corporate affairs were managed, the confidence reposed in the capacity and permanency of tenure of the officers, and all those other indirect and intangible increments of value which enter into the estimate of the worth of stock and help to fix the market value or selling price of the shares." *San Francisco National Bank* v. *Dodge*, 197

*U. S.* 70, 79, 80. With this quotation we may well leave this branch of the case.

Our statute, in accordance with the act of congress, enacts that the assessment and taxation of shares of stock in national banks shall not be at a greater rate than is made or assessed upon other moneyed capital in the hands of individuals in this state. *Pamph. L.* 1905, *p.* 457. It is therefore necessary to determine whether section 17 of the Tax act of 1903, as we construe it, is in accord with this requirement. The only ground on which it is challenged is that trust companies are assessed at a lower rate. The provision as to trust companies is found in section 18 of the act, which enacts that every trust company shall be assessed in the taxing district where its office is situated upon the full amount of its capital stock paid in and accumulated surplus. We must take it for granted, since the decision in *Mechanics National Bank* v. *Baker,* 36 *Vroom* 549, that trust companies do a business which is in competition with the business of national banks. The latter therefore cannot be assessed at a greater rate than the former. It is not essential that the same method of taxation should be adopted, if, in fact, the rate that falls upon trust companies is equal to that imposed upon shares in national banks. *Mercantile National Bank* v. *Mayor· of New York,* 121 *U. S.* 138. In that case a local tax was imposed upon trust companies assessed on the actual value of their capital stock, and a state franchise tax was imposed based upon their income. The method differed from that permitted in the case of national banks where the assessment was upon the shares of stock held by individual stockholders; but the Supreme Court held that taxation in this mode was at least equal to that upon the shares of the individual stockholders, and that there was, therefore, no illegal discrimination against national banks. Under our Tax act of 1903, the method of assessing trust companies and national banks is different, but the question to be decided is whether this difference is such as to amount to a discrimination against the national banks. We think it must be conceded that there would be such discrimination if trust companies were assessable only upon the

book or liquidation value, since in that event the shares of national banks would be taxed upon a value due to elements which would not be taxable in the case of trust companies. It is clear from the language we have already cited from section 17 that the legislature intended to tax the total valuation of shares of stock of national banks in the hands of stockholders, less, of course, such deductions as are permissible from that valuation. In view of the clear and precise language of section 17, we cannot believe that the legislature meant to adopt in section 18 a rule for trust companies the necessary effect of which would be, under the rule prescribed by the act of congress, to abrogate the provision of section 17 for the taxation of national banks and to compel their taxation upon a different basis than that indicated by the words "total valuation of the shares of·stock assessed against the stockholders." We ought not to adopt a construction which would produce such a conflict unless we are compelled to do so, especially since that construction would result in attributing a different meaning to the words "true value" when applied to this kind of personal property from that which the statute gives to them as applied to real estate. We are not compelled to adopt such a construction. Prior to the passage of the act of 1903, this court had been called upon to pass upon the language contained in the Trust Company act of 1899. *Pamph. L., p.* 450, § 29. This provided that every trust company should be taxed in the taxing district where its office is ·situated upon the amount of its capital stock issued and outstanding, and allowed a deduction for the amount of assessment for the real estate. It was contended, under this act, that the assessment was to be only upon the par value of the stock, regardless of the amount of property possessed by the trust company or its accumulated surplus. We held, in *Fidelity Trust Co. v. Vogt*, 3? *Vroom* 86, that different methods of ascertaining the true value might be prescribed for different classes of property, provided the public burden was imposed substantially and proximately according to true value, but that an arbitrary mode of assessment which subjected to taxation a part only of the true value of the property classified, infringed the

constitutional provision and could not be sustained. In applying these general principles to the particular case, we held that a construction of the act that made trust companies assessable only upon the par value of their stock would render it unconstitutional; that such a construction was not necessary since the act could be read to mean that the entire amount of the shares of stock signifying the whole number of shares should be subjected to taxation and at true value. This case was decided February 25th, 1901, and on March 4th, 1901, the Court of Errors and Appeals, in deciding *Mechanics National Bank* v. *Baker*, 36 *Id.* 550, rested their affirmance of the judgment in that case upon the construction of the Trust Company act which had been adopted by the Supreme Court in *Fidelity Trust Company* v. *Vogt*, and said that the opinion of Mr. Justice Van Syckel supported the conclusion by satisfactory reasoning. The difficulty which confronts us is the same difficulty which confronted this court and the Court of Errors and Appeals in the Fidelity Trust Company case and the Mechanics National Bank case. They solved it by adopting such a construction of the Trust Company act as made it harmonize with the method of taxing shares of national bank stock, and they did this, although at that time the language of the act as to the taxation of shares of national banks was far less clear and precise than it now is. Such was the situation when the legislature revised our Tax act in 1903. In revising this portion the language was changed, and the assessment upon trust companies was required to be upon the full amount of the capital stock paid in and accumulated surplus. Nothing was said about the method of valuation. All that the statute directed was an assessment upon the full amount of capital stock and surplus. The language is similar to that contained in the statute under which non-resident holders of national bank stock had been taxed. They were required to be assessed to the amount of such shares, and the Court of Errors and Appeals had just held that this language meant the "real" value, which was treated as synonymous with market value in *Lippincott* v. *Lippincott*. The legislature of 1903 must have known of that construction, and must

be held to have adopted it. To hold otherwise would be to hold that in a revision of the Tax laws the legislature did more than revise, and, in fact, altered the existing law, and, moreover, altered it in such a way as to make section 17 unenforceable in accordance with its express terms by reason of the limitation contained in the act of congress. That the Tax act of 1903 was a mere revision has been settled by the Court of Errors and Appeals in the recent case of *Standard Fire Insurance Co.* ads. *Trenton,* 48 *Id.* 757 (at *p.* 760). It is there held that a change of language in that act did not suffice to change the existing law, and the same rule is applicable to the present case which arises under a different section of the same act. The language of section 18 of the Tax act requires that the capital stock paid in and accumulated surplus of trust companies shall be taxed. A distinction had been made in our cases between the capital stock of a banking corporation and the moneyed capital of the bank. *North Ward National Bank* v. *Newark,* 10 *Id.* 380. Mr. Justice Depue, speaking for this court, said that the moneyed capital of a bank was the property of the corporation, and in whatever form it was invested, was owned by the bank as a corporate entity and not by the stockholders. "The stock or shares," he added, "represent the interest of the shareholders." The distinction between the moneyed capital of a bank and the capital stock, which represents the interests of the shareholders, is far more important than a mere verbal distinction, for upon it rests the right, thoroughly recognized and sustained by the cases already cited, to value bank shares at a sum which includes elements of value that would not be taxable to the bank as a corporate entity. This distinction must be presumed to have been in the mind of the legislature in 1903, and with this knowledge they enacted that the tax be imposed "upon capital stock paid in," not upon the capital of the bank. They used words that had already been decided to designate the interest of the shareholders. It was "stock" that was to be assessed, and the assessment of the full amount, under the rule of Fidelity Trust Company *v.* Vogt, would be an exact equivalent of the total value of the shares of stock assessed

against the stockholders of national banks under the next preceding section of the act; and by this construction the two sections would be brought into harmony. The construction contended for by the banks in the present case had, prior to 1903, been pronounced by this court, with the approval of the Court of Errors and Appeals, to be an unconstitutional method, and unless we are prepared to say that the legislature in 1903 adopted a method which the courts in 1901 had pronounced unconstitutional, we must say that they used the language of section 18 in the sense which had been attributed to similar language in the act of 1899 by the courts.

We do not overlook the decision of this court in *Fidelity Trust Co.* v. *Board of Equalization of Taxes,* 48 *Vroom* 128. There is language in that opinion which conflicts with the view we have expressed, but an examination of the case shows that the question was not directly involved or presented. The tax imposed upon the trust company in that case had been based upon its capital and accumulated surplus, and it is noteworthy that the report shows, at the bottom of page 128, that the assessment was upon the capital and accumulated surplus and not upon capital stock and accumulated surplus as the act required. The tax thus assessed had been paid, and no question arose with reference thereto. The city thereupon undertook to assess the trust company in addition with the value of shares of national bank stock held by it, and the court held that these shares had already, in effect, been taxed, because the whole amount of the assets of the bank had been valued and its debts had been deducted therefrom, so that it was taxed like an individual upon its net worth. Counsel for the city had apparently argued that no harm was done to the trust company by this method, since, if it had been properly taxed, the valuation would have been very much higher than it was; and it was in answer to this argument, and solely in answer to this argument, that this court used the language above referred to. It seems probable that the question was but little discussed, as was quite natural in view of the fact that the tax as assessed upon capital and surplus had been already paid, and the question involved was the taxability of certain specific

assets. No reference is made in the opinion to the constitutional difficulty presented in Fidelity Trust Company *v.* Vogt, nor to the fact that the act of 1903 was a revision and not meant to change the existing law except where a change was clearly indicated, nor to the difficulty which is now presented, growing out of the inconsistency between section 17 and section 18, if that construction be adopted. We do not feel, therefore, that we are bound by the remark of the court in that case.

One argument remains to be considered. The act provides that no franchise tax shall be imposed upon trust companies, and it is said that in assessing the shares of national banks at their market value the value of the franchise is necessarily included. That is the fact; but it applies equally to the assessment of the capital stock of trust companies under the rule of Fidelity Trust Company *v.* Vogt which we have herein adopted. The express prohibition of a franchise tax on trust companies is not in point. The words "franchise tax," in our legislation, have a special meaning, and signify the annual license fee exacted by the state for the privilege of doing business in corporate form. *Honduras Company* v. *Board of Assessors,* 25 *Vroom* 278, a case which has been repeatedly cited and followed. Such a tax is in no sense a property tax. Section 5219 of the United States Revised Statutes, sections 17 and 18 of our Tax act of 1903 and the act of 1905, above cited, deal only with the property tax. None of them assumes to deal with a payment which is not really a tax, but a compensation paid to the government, state or national, as the case may be, for a special privilege—a license fee. This license fee is exacted by the state for the special privilege which the state grants to be a corporation, and the state may exact it or not as it chooses. The national government might exact a similar fee from the national banks which it creates. In fact it has not done so. In this respect national banks and trust companies stand on the same level. Whatever value the franchise of either may add to the property of the shareholders is reached by the property tax imposed in the case of national banks upon the shares and included in the total valua-

tion required by section 17, and imposed in the case of trust companies upon the capital stock and included in the full amount required to be taxed by section 18.

The judgment of the board of equalization reducing the assessment must be set aside, with costs. It is agreed that if this is done the amount fixed by the county board is correct. The stock, therefore, should be assessed at that valuation.