COMMERCIAL TRUST COMPANY OF NEW JERSEY, PROSE-
CUTOR, v. HUDSON COUNTY BOARD OF TAXATION ET
AL., DEFENDANTS.

Argued October 10, 1914—Decided October 30, 1914.

1. Under the National Banking act national banks must neces-
sarily be treated as a distinct class for purposes of taxation, and
the inclusion of banking capital of state institutions with that
of national banks in chapter 90 of the laws of 1914 (*Pamph.
L., p.* 141), tends to uniformity and not diversity.

2. Under the constitution of New Jersey, all persons and corpora-
tions similarly situated must be in the class in order·that taxa-
tion may be sustained, but private bankers are not similarly
situated to state banks in that a private banker has no shares of
capital stock and savings banks are not, like state banks, organized
for the purpose of making money, but are depositaries for the ac-
cumulation of savings whereby the depositors may receive, through
certain limited investments, a moderate rate of interest on their
deposits; and, therefore, the exclusion of private bankers and
savings banks from the act in question was not unconstitutional.

3. The classification of banking capital in chapter 90 of the laws
of 1914 is not based upon the peculiar use of the property, but
upon the fact that the act of congress requires that the capital
taxed be assimilated in the rate of taxation to other banking
capital.

4. Where one bank holds shares in another, there is no double taxa-
tion, because section 4 of the act declares that the tax imposed
shall be in lieu of all other state, county or local taxation, and
the evident intent is to tax shares but once.

5. There is a rational distinction between real estate and personal
property which is well recognized in law, and the objection that
real estate is taxed by a different method from personal property
is not a valid one.

6. Where different provisions of an act are contradictory, the con-
tradiction does not make the act unconstitutional, but only re-
quires the ascertainment which of the conflicting provisions ex-
presses the intent of the legislature.

7. Section 1 of chapter 90 of the laws of 1914 requires shares of
bank stock to be assessed and taxed according to their true value
to be determined in the manner thereinafter prescribed; section 2
provides that the value of each share shall be ascertained and
determined by adding together the amount of the capital, surplus,
and undivided profits, and deducting the assessed value of the
real property; section 3 requires a statement of the amount of
capital, surplus and·undivided profits as the same are indicated
by the books of the company; upon these statements the county

board is required to act by section 6; but it is authorized to resort to other sources of information, and required to ascertain the true value of all the capital stock issued and outstanding. *Held,* that the tax ascertained by the county board must be based on true value after considering liquidation value, book value, and the true value of all the capital stock issued and outstanding; and that it is section 6 that prescribes the manner in which true value shall be ascertained, and that manner is by the county board instead of by local assessors.

8. The question of discrimination against national banks in the matter of taxation is a question of fact and the court cannot hold that there is discrimination where there is a failure to show that the statutes permit a deduction for debts to other moneyed capital that is not permitted to owners of shares in national banks; or that discrimination results in favor of private bankers by reason of their not being taxed on exempt securities; or that moneyed capital is in any case in New Jersey taxed at a lower rate than that fixed in chapter 90 of the laws of 1914.

On *certiorari.*

Before Justice SWAYZE.

For the prosecutor, *Gilbert Collins, Willard C. Fisk* and *John R. Hardin.*

For the defendants, *Herbert Boggs* and *James J. Murphy.*

*Carlton B. Pierce,* as *amicus curiæ.*

The opinion of the court was delivered by

SWAYZE, J. The only question raised is the validity of chapter 90 of the laws of 1914, for the taxation of banking capital. The act is assailed as violating the provision of our state constitution requiring property to be assessed under general laws by uniform rules according to its true value, and as violating the act of congress which forbids the taxation of shares of stock of national banks at a greater rate than is assessed on other moneyed capital.

The constitutionality of the act is assailed upon the grounds:

(1) That banking capital does not constitute a class for purposes of taxation.

(2) That the legislature has not included all the members of the class, since it has excluded private bankers and savings banks.

(3) That property of banks not used for banking purposes is included in the valuation.

(4) That the method of valuation prescribed involves double taxation, when one bank holds stock of another.

(5) That real estate of a bank is taxed by a different method from its other property.

(6) That instead of being taxed at their true-value, bank shares are required arbitrarily to be taxed at their book or liquidation value.

For many years prior to 1905 the stock of national banks was taxed in a way peculiar to itself, and although litigation arose, no question seems to have been raised that such stock constituted a proper class. *State, North Ward National Bank, v. City of Newark,* 39 *N. J. L.* 380; 40 *Id.* 558; *Mechanics National Bank* v. *Baker,* 65 *Id.* 549; *Newark* v. *Tunis,* 81 *Id.* 45; *affirmed,* 82 *Id.* 461. The fact that the act of 1914 includes other moneyed capital in the same scheme of taxation, instead of taxing it by a diffrent scheme under a separate act, as was the case at the time Newark *v.* Tunis was decided, does not alter the legal situation. The inclusion in the act of 1914 of property which the National Banking act requires should be taxed at no lower rate, surely could not make bad the classification that was in effect held to be good in Newark *v.* Tunis. The inclusion of banking capital of state institutions with that of national banks tends to produce uniformity and not diversity. It is important to bear in mind that the classification is not, as counsel contended, based upon the use to which the property is put, as in the railroad tax cases, but is a classification forced upon the state by the provisions of the National Banking act, which, by virtue of its being a federal statute, is of superior force as to federal corporations to our state constitution. Under this act, national banks must necessarily be treated as a distinct class whose corporate property

as such cannot be assessed by the states, and since the act of congress only permits the taxation of national banks by means of a tax upon the shares of stock—that is, the property of the stockholders, and requires that they shall be taxed at no higher rate than other moneyed capital, it justifies and almost requires this kind of property, whether of federal or state corporations, to be classified by itself. Many cases have been decided by the United States Supreme Court, approving the taxation of the shares of stock of national banks by special methods, and the question that has usually been presented has been merely whether the national banks were taxed at a higher rate than other moneyed capital. I do not doubt that, under our state constitution, all persons and corporations similarly situated must be included in the class in order that the taxation may be sustained, and if private banks and savings banks are situated similarly to state banks and trust companies, the act must fail, since it does not include private bankers and savings banks. Private bankers, however, are not similarly situated to the state banks and trust companies, as far as concerns the basis on which the classification of the statute is based. What is taxed by that statute is that which alone is permitted to be taxed by the National Banking act, namely, shares of stock in a corporation. In the case of a private banker, there are no shares of stock. There is a difference, as was pointed out in the Tunis case, between shares of stock in a corporation and the property of the corporation which gives the shares a part of their value, since the value of the shares represents not merely the value of the assets of the bank, but the additional value of good will, public confidence, prudent management and the ownership of exempt property. All these elements may exist in the case of a private banker, but their value is not negotiable as it is when it inheres in the shares of a corporation. An added value is given to shares in a banking corporation or trust company, aside from the value of actual assets, by the probability that these personal elements will continue to the advantage of the undying corporation; the value is not only negotiable, but is not subject to the same extent as in the case of a private banker to the vicissitudes of human

life. The other element of value, the possession of exempt securities, is different, and, as to this, the justification of a distinction between the method of taxing shares of a banking corporation and the property of a private banker must rest upon the somewhat artificial distinction made by the National Banking act and sustained by the adjudged cases, between the taxation of the property of a corporation and the taxation of the sharehold interest of the stockholder. In the case of national banks, the act of congress does not permit the property of the corporation to be taxed, but only the shares of the stockholder; the shares of stock in state banks and trust companies are naturally assimilated to the shares of national banks; but the method of taxing shares is impossible in the case of private bankers. These natural differences justify different treatment.

Savings banks are quite different from ordinary banks of discount and deposit and trust companies. They are engaged in a different business, not primarily for the making of money, but rather for the purpose of enabling people of small means to combine their small wages and by careful investments in restricted securities earn a moderate rate of interest. So far as they are without capital stock, the same reasons that justify the omission of private bankers from the act justify the omission of savings banks. There is no proof in this case that there is any savings bank with capital stock, and the court is not required to take judicial notice without proof of the provisions of charters of private corporations. Nevertheless, in accordance with the spirit of the new Practice act, as to additional evidence upon appeal, and in order to avoid resting a decision in a case of great public importance upon a mere omission of proof, I have looked into the facts and find but one savings bank with capital stock—the Paterson Savings Institution. *Pamph. L.* 1869, *p.* 1265. The existence of this one institution is enough to prevent the applicability of the argument drawn from the distinction between corporations with and those without shares of stock, and unless savings banks can be otherwise distinguished from banks and trust companies, the classification of the act is bad. I think they

can be so distinguished, upon the ground already stated, that they are not organized for the purpose of making money. It is true that under the original charter of the Paterson Savings Institution there was nothing to prevent its stockholders from making a profit as any bank of deposit and discount might; but that charter expired by its own limitation in 1889. It may have been extended under the act of 1888 (*Gen. Stat., p.* 3013, *pl.* 73, 74), but if so, it must necessarily have been subject to the provisions of the general act of 1876 (*Gen. Stat., p.* 3000), since otherwise the act for the extension of the charter would amount to a special act conferring corporate powers, and be forbidden by the constitutional amendment of 1875, article 4, section 7, paragraph 11. In 1888, the general act (*Gen. Stat., p.* 3006, § 32) required that depositors should receive as nearly as might be all the profits of the corporation after deducting necessary expenses and reserving a surplus for the security of depositors. Similar provisions are to be found in the act of 1906. *Comp. Stat., p.* 4706, *pl.* 40. These statutory provisions, as well as the strict limitation of the character of investments to be made by savings banks, emphasize the fact that they are not commercial institutions like other banks and trust companies. I think they form a class by themselves, and may properly be excluded from an act taxing commercial banks and trust companies. This view has already been sustained by the Supreme Court of the United States. The question was directly raised in *Mercantile Bank* v. *New York,* 121 *U. S.* 138. In that case, the court assumed that the State of New York did not tax either savings banks or their individual depositors, and Mr. Justice Matthews, speaking for the court, said: "It cannot be denied that these deposits constitute moneyed capital in the hands of individuals within the terms of any definition which can be given to that phrase; but we are equally clear that they are not within the meaning of the act of congress in such a sense as to require that, if they are exempted from taxation, shares of stock in national banks must thereby also be exempted from taxation. No one can suppose for a moment that savings banks come into any possible competition with national banks of the United States.

They are what their name indicates, banks of deposit for the accumulation of small savings belonging to the industrious and thrifty." Since, as already said, the classification is one made necessary by the National Banking act, the exclusion from the class of institutions which are declared by the United States Supreme Court to be distinct and different in character is an exclusion resting upon a natural and rational basis. There is nothing in our decision in *Trenton Savings Fund* v. *Richards,* 52 *N. J. L.* 156, to the contrary. The question was indeed suggested in that case whether the legislature could exempt from taxation all the property of savings banks, but was not decided. The decision turned on the fact that the legislature had exempted real estate purchased under judgment or in settlement of debt, and remitted to ordinary taxation real estate purchased under foreclosure.

The objection that the effect of the act is to tax property of the bank not used for banking purposes is based upon the theory that banking capital is classified according to its use. This is an error. The classification is based, not upon the peculiar use of the property, but upon the fact that the act of congress requires the interest of the shareholder to be taxed and to be assimilated in rate of taxation to other banking capital. I do not understand that the railroad tax cases decided that use was the only permissible basis of classification. They held use a permissible basis, but it was unnecessary for the court in those cases to hold that it was the only permissible basis.

The objection that the rule is not uniform because double taxation results where one bank holds shares in another, seems untenable, in view of the provision of section 4 that the tax imposed shall be in lieu of all other state, county or local taxation upon such shares, "or upon any personal property held or owned by banks, banking associations or trust companies, the value of which enters into the taxing value of such shares of stock." The evident intent is to tax but once.

The objection that real estate is taxed by a different method is sufficiently answered by the fact that the same was true of national banks, under the law in force when Newark *v.* Tunis

was decided, and if this objection were valid, that case must have been otherwise decided. Even if the effort to assimilate state banks and trust companies in this respect to national banks did not tend to produce uniformity instead of diversity, there is a rational distinction between real estate and personal property which is well recognized as important in nearly every branch of the law. This objection cannot be sustained.

The stress of the attack upon the act rests on the prosecutors' contention that it prescribes an arbitrary method of ascertaining true value, and one that had already been disapproved by the Court of Errors and Appeals. The act provides, in section 1, that the shares shall be assessed and taxed according to their true value, to be determined in the manner thereinafter prescribed. The prosecutors contend that this is the manner prescribed in section 2, by adding together the amount of the capital, surplus and undivided profits, and deducting the assessed value of the real property, and dividing the result by the number of shares. I agree that this method would not always result in the ascertainment of true value as settled by the Tunis case, and if true value, in section 1, means the value ascertained by the method of section 2, the language is self-contradictory. The contradiction, if it exists, however, does not make the act unconstitutional; it only requires the court to ascertain which of the conflicting provisions expresses the intent of the legislature. There are cases holding that the later of two inconsistent provisions in a statute must prevail, likening the construction of statutes to the construction of wills rather than of deeds. The rule of these cases is, at best, artificial, and is based upon the false premise that the provision standing in the later position in the statute represents the later intent of the legislature. The whole statute, however, as has been well said, is approved and becomes law at the same instant, and not section by section or clause by clause; in fact, the last amendment is quite as likely to appear in the first section as in any other. The rule, if, indeed, it be a rule, is by no means inflexible, and, as the Court of Appeals of New York has said, is to be resorted to only *in extremis*. *People, ex rel. Mason,* v. *McClave,* 99 *N. Y.*

83, 89, 90. It is rejected when it leads to conflict with the legislative intent. *McCormick* v. *Village of West Duluth,* 50 *N. W. Rep.* 128; *State* v. *Bates,* 104 *Id.* 709; `People` v. *Mohr,* 96 *N. E. Rep.* 893. Cases are collected in the note to *State* v. *Mulhern,* 6 *A. & E. Am. Cas.* 856. We are bound to ascertain the legislative intent, and upon well-settled principles, which require no citation of authorities, to adopt, if possible, a construction that will make the act valid legislation. We assume that the legislature meant to pass a constitutional statute. If necessary to sustain the constitutionality of the act, we should not hesitate to reject as inconsistent all the qualifying words and retain only the words "true value." It is not, however, necessary to go so far. The method prescribed by the legislature, in section 2, is not a complete method of ascertaining true value. It does not provide how the value of the capital, surplus and undivided profits shall be determined. Sometimes this value properly ascertained would give a correct result. It is only when the shares of stock have a value not represented by the actual assets of the corporation, or when for some reason the true value is less than the value of the actual assets, that the addition of the three amounts, when determined, would fail to give the true value. The rule of section 2 is only a working rule to enable assessors to ascertain true value, not the basis of assessment. Section 2 does not stand alone. Section 3 requires a statement of the amount of capital, surplus and undivided profits as the same are indicated by the books of the company, and upon these statements the county board is required to act by section 6. The legislature could not have thought that the books of the corporation would be an infallible test of the amount of capital, surplus and undivided profits; they would be no more infallible than the method of section 2; the statement was no doubt required because it would furnish information that would assist in determining the true value. So, the value of each share ascertained under section 2 would give valuable information; but the county board is not limited by section 6 to the facts ascertained from the books (book value), and from adding together the amount

of capital, surplus and undivided profits (liquidation value). It is authorized to resort to other sources of information which may be open, and required to ascertain the true value of all the capital stock issued and outstanding. These last words had, at the time the act of 1914 was passed, a defined meaning in statutes providing for the taxation of trust companies, and were held to be equivalent to the whole number of shares. *Fidelity Trust Co.* v. *Vogt*, 66 *N. J. L.* 86. The provision in section 6, last cited, then requires the county board to ascertain the true value of the whole number of shares issued and outstanding. When section 6 goes on to say that the amount thus ascertained to be due upon the shares of stock shall be the tax levied and to be paid, it can only mean the amount ascertained by the county board based on true value after considering—(1) the value ascertained by adding together capital, surplus and undivided profits (liquidation value) ; (2) the amount of capital, surplus and undivided profits as the same are indicated by the books of the company (book value) ; (3) the true value of all the capital stock issued and outstanding. It is section 6 alone that prescribes the manner in which true value of all the capital stock shall be ascertained, and that manner is by the county board instead of by local assessors; the value of a single share is to be determined in accordance with section 2 by deducting the assessed value of real estate and dividing by the number of shares.

The prosecutors wrongly assume that the words "to be determined in the manner hereinafter prescribed" refer to the incomplete and imperfect method set forth in section 2. In fact, they refer to the proceedings of the body which is to determine, in the first instance, the true value; that is to say, the county board of taxation, and the prescribed manner is not the incomplete one of section 2, nor that of section 3, but the complete scheme of section 6, which involves a consideration of all the elements of the problem. I conclude that the act is constitutional.

The next question is whether it conforms to the requirement of the National Banking act that shares of national banks shall not be assessed at a higher rate than other

moneyed capital. The chief objections urged in this respect are—*first,* that a rate of three-fourths of one per cent. is imposed on national bank stock, while the rate imposed on private bankers may be less; *second,* that a private banker is not taxed on that part of his capital which may be invested in United States bonds or other so-called exempt securities; *third,* that by the express provisions of the act of 1914 no deduction can be made for debts. The question presented involves the construction and applicability of the act of congress, and the decisions of the United States Supreme Court must, therefore, be our guide. That court has held that the question of discrimination against the national banks is a question of fact, not a question of the possible effect of the statute. The provisions of a tax act have been held to conflict with the act of congress, and yet the act was not thereby rendered void. *Supervisors* v. *Stanley,* 105 *U. S.* 305, involved a statute which did not permit the shareholder to make deduction of the amount of his debts from the valuation of his shares, yet taxes imposed thereunder were sustained because the statute on its face did not show that any taxpayer was allowed to deduct for debts. The law, said the court, provided a valid mode of assessment for those stockholders of national banks who had no debts to deduct. So, the statute in the present case does not on its face show that any taxpayer is allowed to deduct his debts from the amount of his assessed valuation. An examination of other statutes shows very serious doubt whether any owner of moneyed capital has the right to make such a deduction. Chapter 191 of the laws of 1914 enacts that hereafter no deduction for debt shall be allowed from the assessed value of any goods and chattels in which the value inheres in and is supported by the thing or article itself. It is unnecessary for the present purpose to pass upon the proper construction of this act. It is enough to know that "goods and chattels" are words of such extensive meaning that they are held to include corporate stock (*Curtis* v. *Steever,* 36 *N. J. L.* 304, 306, 307), and shares of a company (*Robinson* v. *Jenkins,* 24 *Q. B. D.* 275; 59 *L. J. Q. B.* 147. Chattels, said Lord Justice Fry, in the case last cited, is one of the largest

words known to the law with regard to personal property. It has been held to include notes (*Clapp* v. *Shepard,* 23 *Pick.* (*Mass.*) 228), money (*Handy* v. *Dobbin,* 12 *John.* (*N. Y.*) 220) and many other kinds of property (20 *Cyc.* 1268, 1270), and our own Court of Errors and Appeals has said that "bonds, bills of exchange and promissory notes are personal chattels, and may be sold, like any other chattels, for what they will bring." *Durant* v. *Banta,* 27 *N. J. L.* 624, 632. It would be difficult to specify better the investments in which moneyed capital is usually made. It is especially difficult, in view of our constitutional provision, to limit the connotation of "goods and chattels," in chapter 191, and to see how any moneyed capital or that in which it is invested can be excluded. Without pursuing the subject or attempting to pass upon the construction of chapter 191, it is enough to say that before the present objection of the prosecutors' case can prevail, we must be shown that the statutes permit a deduction for debts to other moneyed capital that is not permitted to owners of shares in national banks. Until we are shown such a statute, we cannot say that there is any discrimination against shares of stock in national banks, and even then, under Supervisors *v.* Stanley, there would be no discrimination against national banks, unless it should be shown as a fact that some holder of national bank stock had been refused a deduction under circumstances where a deduction had been allowed to the owner of other moneyed capital.

The same reasoning is applicable to the objection that private bankers are not taxed upon exempt securities and may pay less than three-fourths of one per cent. It is not shown that in fact any such discrimination actually results. We know of nothing to induce the belief that it does. It is quite possible that the value of shares of a national bank may be in part the reflection of the value of exempt securities held by the bank, but it is also possible that such exempt securities may be set off against its deposits and regarded as investments thereof, while the capital of the bank itself may be regarded as invested in securities that would be taxable but for

the peculiar method of taxation prescribed by the National Banking act. Even the government bonds held to secure circulation may not add to the value of the shares of stock; there have been times when many banks were glad to get rid of these bonds and surrender the circulation based thereon. In the absence of proof of actual discrimination against the national banks, we cannot condemn the assessment.

As to the limitation of the assessment to three-fourths of one per cent., it is enough to say that the Supreme Court of the United States has recently sustained an assessment under a similar statute of New York where the rate was limited to one per cent. *Amoskeag Savings Bank* v. *Purdy, 231 U. S. 373.* It is not shown that there is any case in New Jersey where moneyed capital is taxed at a lower rate than three-fourths of one per cent. If we may judge from our own knowledge a higher rate prevails universally.

I find, therefore, that the taxes in the present case are valid. There should be judgment for the defendants.