DIVISION OF TAX APPEALS.

NATIONAL BANK OF NEW JERSEY, A CORPORATION OF
THE UNITED STATES, PETITIONER, v. MIDDLESEX
COUNTY BOARD OF TAXATION, RESPONDENT.

For the Year 1946.

Decided May 17th, 1948.

For the petitioner, *Irving Riker*.

For the respondent, *Paul W. Ewing* (by *John T. Keefe*).

WAESCHE, COMMISSIONER. This appeal is brought by the National Bank of New Jersey, a banking association organized under the authority of the United States, to the Division of Tax Appeals from the judgment of the Middlesex County Board of Taxation. The principal place of business of said bank is located at 390 George Street, in the City of New Brunswick, Middlesex County, New Jersey. Pursuant to section 54:9-5 of the Revised Statutes as amended, *Pamph. L.* 1942, *ch.* 235; *N. J. S. A.* 54:9-5, the said bank filed with the secretary of the Middlesex County Board of Taxation a statement, under the oath of its president, which sets forth, among other things, the capital, surplus, and undivided profits of the bank as indicated by its books as of January 1st, 1946, as follows:

| | |
|---|---:|
| Preferred Stock "A," par value... $150,000 | |
| Preferred Stock "B," par value... 168,750 | |
| Common Stock | $550,000.00 |
| Surplus | 350,000.00 |
| Undivided profits | 142,595.14 |
| Total | $1,042,595.14 |

The statement also shows that the total assessed value of the real property of the bank for the year 1946 is $352,890. The Middlesex County Board of Taxation fixed the true value of the common stock of said bank, as of January 1st, 1946, at $689,705.14, and assessed the stock accordingly. The bank appealed this assessment to the County Board. Its appeal was dismissed and the assessment affirmed.

The bank contends that in ascertaining the true value of its common stock, the retireable value of its preferred stock and the assessed value of its real property should be deducted from the sum of its capital, surplus, and undivided profits, *R. S.* 54:9-4; *N. J. S. A.* 54:9-4. The County Board deducted the par value of the preferred stock. Its retireable value is twice its par value. Hence, this appeal to the Division of Tax Appeals.

Section 54:9-4 of the Revised Statutes, *N. J. S. A.* 54:9-4, provides as follows:

"The value of each share of common stock of each bank shall be ascertained and determined by adding the amount of its capital, surplus and undivided profits and deducting therefrom the assessed value of its real property, * * * and also deducting therefrom an amount equal to the aggregate par or retireable value of all classes of the issued and outstanding preferred stock of such bank, and by dividing the result by the number of its shares of common stock outstanding, *it being the intention that the shares of preferred stock and the capital represented thereby shall not be assessed or taxed;* * * *."

The issue in this appeal lies in the application of the law embraced in the foregoing section 54:9–4 to the facts of the case, viz., should the par value or the retireable value of the preferred stock of this bank be deducted from the sum of its capital, surplus, and undivided profits in ascertaining the true value of the common stock?

The Constitution of New Jersey provided that property should be assessed for taxes "according to its true value," article 4, section 7, paragraph 12; *N. J. S. A.* The Court of Errors and Appeals in the case of *North Bergen Township* v. *Bergen Boulevard Holding Co.*, 133 *N. J. L.* 569; 45 *Atl. Rep.* (*2d*) 623, 626, held that: "The constitutional requirement is that property is to be assessed for taxation at its true value." In the case of *New Jersey Bell Telephone Co.* v. *Newark,* 118 *N. J. L.* 490; 193 *Atl. Rep.* 844, 847; *affirmed,* 124 *N. J. L.* 451; 12 *Atl. Rep.* (*2d*) 675, the Supreme Court said: "*The interpretation generally given to the* expression 'true value,' as used in the constitution and tax laws, is that the valuation for taxation should be on the price which the assessor believes could be obtained for the property, in money, at a fair sale, * * *."

The statute for the taxation of bank stock provides that: "The shares of the common capital stock of banks, * * * shall be assessed and taxed according to their true value, to be determined in accordance with the provisions of sections 54:9–4 and 54:9–9 of this title." *R. S.* 54:9–2; *N. J. S. A.* 54:9–2. The phrase "according to their true value" means at their true value or fair selling price. Sections 54:9–4 and

54:9–9 are merely statutory guides for the determination of the true value of the common stock.

Section 54:9–9 provides that the true value of the common capital stock of any bank is to be ascertained and determined from an inspection of the statement filed by the bank with the secretary of the County Tax Board, and "from any other sources of information which may be open" to the County Board.

In the case of *Newark* v. *Tunis*, 81 *N. J. L.* 45; 78 *Atl. Rep.* 1066, the Supreme Court held that the true value of the shares of stock of a national bank was their market value. In the case of *Commercial Trust Co.* v. *Hudson Board of Taxation*, 86 *N. J. L.* 424; 92 *Atl. Rep.* 263, 267; *affirmed*, 87 *N. J. L.* 179; 92 *Atl. Rep.* 799, the Supreme Court said:

"The method prescribed by the legislature, in section 2 [*Pamph. L.* 1914, *p.* 141], is not a complete method of ascertaining true value. It does not provide how the value of the capital, surplus and undivided profits shall be determined. Sometimes this value properly ascertained would give a correct result. It is only when the shares of stock have a value not represented by the actual assets of the corporation, or when for some reason the true value is less than the value of the actual assets, that the addition of the three amounts, when determined, would fail to give the true value. The rule of section 2 is only a working rule to enable assessors to ascertain true value, not the basis of assessment. Section 2 does not stand alone. Section 3 requires a statement of the amount of capital, surplus and undivided profits as the same are indicated by the books of the company, and upon these statements the county board is required to act by section 6. The legislature could not have thought that the books of the corporation would be an infallible test of the amount of capital, surplus and undivided profits; they would be no more infallible than the method of section 2; the statement was no doubt required because it would furnish information that would assist in determining the true value. So, the value of each share ascertained under section 2 would give valuable information; but the county board is not limited by section 6 to the facts ascertained from the books (book

value), and from adding together the amount of capital, surplus and undivided profits (liquidation value). It is authorized to resort to other sources of information which may be open, and required to ascertain the true value of all the capital stock issued and outstanding. These last words had, at the time the act of 1914 was passed, a defined meaning in statutes providing for the taxation of trust companies, and were held to be equivalent to the whole number of shares. *Fidelity Trust Co.* v. *Vogt,* 66 *N. J. L.* 86; 48 *Atl. Rep.* 580. The provision in section 6, last cited, then requires the county board to ascertain the true value of the whole number of shares issued and outstanding. When section 6 goes on to say that the amount thus ascertained to be due upon the shares of stock shall be the tax levied and to be paid, it can only mean the amount ascertained by the county board based on true value after considering—(1) the value ascertained by adding together capital, surplus and undivided profits (liquidation value); (2) the amount of capital, surplus and undivided profits as the same are indicated by the books of the company (book value); (3) the true value of all the capital stock issued and outstanding. It is section 6 alone that prescribes the manner in which true value of all the capital stock shall be ascertained, and that manner is by the county board instead of by local assessors; the value of a single share is to be determined in accordance with section 2 by deducting the assessed value of real estate and dividing by the number of shares.

"The prosecutors wrongly assume that the words 'to be determined in the manner hereinafter prescribed' refer to the incomplete and imperfect method set forth in section 2. In fact, they refer to the proceedings of the body which is to determine, in the first instance, the true value; that is to say, the county board of taxation, and the prescribed manner is not the incomplete one of section 2, nor that of section 3, but the complete scheme of section 6, which involves a consideration of all the elements of the problem."

*R. S.* 54:9–4; *N. J. S. A.* 54:9–4, is practically a replica of "section 2" mentioned in the foregoing opinion of the Supreme Court. *R. S.* 54:9–5; *N. J. S. A.* 54:9–5 is prac-

tically the same as "section 3," and *R. S.* 54:9–9; *N. J. S. A.* 54:9–9, is taken from "section 6" mentioned in the above opinion.

In the case of *Second National Bank, &c.,* v. *State Board of Tax Appeals,* 114 *N. J. L.* 573; 178 *Atl. Rep.* 96, 97, the Supreme Court said: "The county board must, from all the evidence, determine the *true value* of bank stock for purposes of taxation. The *bank's statement is not binding.*"

The National Bank of New Jersey is a banking association organized under the authority of the laws of the United States. The federal statutes provide as follows:

"If any part of the capital of a national bank \* \* \* consists of preferred stock, the determination of whether or not the capital of such bank is impaired and the amount of such impairment shall be based upon the par value of its stock even though the amount which the holders of such preferred stock shall be entitled to receive in the event of retirement or liquidation shall be in excess of the par value of such preferred stock. 12 *U. S. C. A.,* § 51b-1.

"The term 'capital' as used in provisions of law relating to the capital of national banking associations shall mean the amount of unimpaired common stock plus the amount of preferred stock outstanding and unimpaired; \* \* \*." 12 *U. S. C. A.,* § 51c.

"No association \* \* \*, shall, during the time it shall continue its banking operations, withdraw, or permit to be withdrawn, either in the form of dividends or otherwise, any portion of its capital." 12 *U. S. C. A.,* § 56.

On January 12th, 1937, the National Bank of New Jersey amended its Articles of Association and fixed its capital stock at $875,000, divided as follows:

(a) 50,000 shares of Preferred Stock "A" of the par value of $7.50 each, or a total of $375,000;

(b) 10,000 shares of Preferred Stock "B" of the par value of $25 each, or a total of $250,000;

(c) 10,000 shares of Common Stock of the par value of $25 each, or a total of $250,000.

The amended Articles of Association permit the bank to increase its capital stock by the issuance of additional shares

of common stock or by increasing the par value per share of such stock. On January 12th, 1943, the total number of shares of common stock outstanding was 10,000 of the par value of $25 each. On January 1st, 1946, the total number of shares of common stock outstanding was 10,000 and the capital represented by those shares of common stock was $550,000.

The amended Articles of Association provide that as long as any shares of preferred stock "A" are outstanding, the net profits of the bank must be applied first to the payment of dividends on the outstanding preferred stock "A," next to the payment of specified amounts into the preferred stock "A" retirement fund, and the balance, if any, to the payment of dividends on the outstanding preferred stock "B," and then into the preferred stock "B" retirement fund.

The Articles of Association provide further that no preferred stock shall be retired unless the sum total of the unimpaired capital, surplus, and undivided profits, and the retirement funds exceed $1,500,000 by an amount at least equal to the sum necessary to effect such retirement, except with the approval of the Comptroller of the Currency. And no shares of preferred stock shall be called or purchased for retirement unless all accrued dividends on the preferred stock to be retired have been paid.

Whenever the balance in the preferred stock "A" retirement fund shall amount to as much as $15,000, the bank must offer to purchase preferred stock "A" for retirement from the lowest bidder but not in excess of $15 per share, its retireable value.

Whenever the balance in the preferred stock "B" retirement fund shall amount to as much as $10,000, the bank must offer to purchase preferred stock "B" for retirement from the lowest bidder but not in excess of $50 per share, its retireable value.

The preferred stock "A" is subject to retirement by call upon the payment of $15 per share, and the preferred stock "B" is subject to retirement by call upon the payment of $50 per share, provided the capital of the bank is not impaired, or the sum of its capital, surplus and undivided profits reduced below $1,500,000.

Thus the Articles of Association and the federal statute protect the capital of the bank against impairment by the retirement of the outstanding preferred stock. The retireable value of the preferred stock at any particular time is subject to the provisions of the Articles of Association and the federal statute. The retireable value of the preferred stock at any particular time is, therefore, a fact to be determined from the evidence. It is not a fixed and definite amount at all times.

The capital of the bank on January 1st, 1946, was $868,750. This capital was represented by 20,000 shares of outstanding preferred stock "A," 6,750 shares of outstanding preferred stock "B," and 10,000 shares of outstanding common stock. As of January 1st, 1946, the capital was divided as follows:

> Par value Preferred "A" Stock ........ $150,000
> Par value Preferred "B" Stock ........ 168,750
> Par value Common Stock ............. 550,000

On January 1st, 1946, the surplus was $350,000, and the undivided profits were $142,595.14. The total amount of capital, surplus, and undivided profits, on January 1st, 1946, was $1,361,345.14. As before-mentioned, no preferred stock can be retired without the approval of the Comptroller of the Currency, unless the sum of the unimpaired capital, surplus, and undivided profits, and the retirement funds exceed $1,500,000 by an amount at least equal to the sum necessary to effect such retirement. Therefore, the preferred stock had no retireable value on January 1st, 1946, since there was lacking the approval of the Comptroller of the Currency.

Furthermore, on January 1st, 1946, the surplus was $350,000 and the undivided profits were $142,595.14. Hence, the surplus and the undivided profits amounted to $492,-595.14. Therefore, if the preferred stock were called and retired at twice its par value, the bank would have to pay out $637,500. This would impair the capital of the bank, which is forbidden by its Articles of Association and the federal statute.

Mr. Raymond E. Grimes, the executive vice-president of the bank, testified as follows:

"*Q.* And on December 31st, 1945, or beginning of January, 1946, was there any definite plan that a certain and specific amount of either of these two classes of stock would actually be redeemed during the year 1946? *A.* Planned where? By whom?

"*Q.* The bank. They are the only ones retiring it, isn't that right? *A.* We had no predetermined ideas that we might exceed the requirements of the Articles of Association."

Now let us again revert to *R. S.* 54:9–4; *N. J. S. A.* 54:9–4, which says that it is "the intention that the shares of preferred stock and the capital represented thereby shall not be assessed or taxed." Here, then, is the reason for deducting the preferred stock from the capital, surplus, and undivided profits. It is deductible only because it is not taxable. What, then, are the assets of the bank which are not to be assessed or taxed? The statute, *R. S.* 54:9–4; *N. J. S. A.* 54:9–4, expressly mentions only the *capital represented by the preferred stock.* In this case, on January 1st, 1946, that capital amounted to only $318,750, the par value of the preferred stock.

Since the statute permits the deduction of the par or retireable value of the preferred stock in determining the true value of the common stock, we can assume that the assets of the bank which the statute intended should not be assessed or taxed also includes such funds as may have been set aside or are immediately available for the retirement of the preferred stock. The evidence does not show that any funds had either been set aside for the retirement of the preferred stock or were available for that purpose of January 1st, 1946. Therefore, the only assets of the bank represented by the preferred stock which are not to be assessed or taxed for the year 1946 are $318,750, which sum represents the par value of the preferred stock. In the case of *Second National Bank, &c.,* v. *State Board of Tax Appeals, supra,* the Supreme Court said:

"No bank can value its assets for the purpose of carrying on business at one figure and then seek the reduction of taxes by substituting figures which, if submitted elsewhere, would result in the loss of its franchise."

It is the intent of section 54:9–4 of the Revised Statutes, *N. J. S. A.* 54:9–4, that the true value of the common stock of a bank shall be the value of those assets of the bank which are represented by the common stock less the assessed value of its real property. Those assets would be the bank's capital, exclusive of its real property, as represented by the common stock at its par value plus whatever surplus and undivided profits the holders of the common stock would be entitled to receive in case of liquidation, or such as should be attributed to the common stock in order to keep the bank a solvent and going concern under the law. A bank might conceivably build up a surplus and undivided profits more than sufficient to retire the preferred stock at its call or retireable value. In such a case, it would not be proper to attribute all of that surplus and undivided profits to the common stock, because this money would first have to be used for the retirement of the preferred stock. In such a case, it would be proper to deduct the full retireable value of the preferred stock. But where the preferred stock cannot be retired at its retireable value as of the assessing date, the bank can only deduct the par value of the preferred stock and the money in the retirement fund or available therefor at that time in arriving at the true or assessable value of the common stock.

From the evidence in this case and for the foregoing reasons the appeal should be dismissed and the judgment of the County Board affirmed.