61 N.J. Super. 170 (1960)
160 A.2d 316
VILLAGE OF RIDGEFIELD PARK ET ALS., PLAINTIFFS,
v.
BERGEN COUNTY BOARD OF TAXATION ET ALS., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided April 12, 1960.
*176 Messrs. Morrison, Lloyd & Griggs (Mr. William R. Morrison, appearing) attorneys for plaintiffs.
Mr. Theodore I. Botter, Deputy Attorney General, appeared for defendant Bergen County Board of Taxation (Mr. David D. Furman, Attorney General, attorney).
WAESCHE, J.S.C.
This action is a procedure in lieu of the prerogative writs of certiorari and mandamus. There is an alliance between these two proceedings. They have a common interest, but they seek different forms of relief. They will be treated separately in this opinion. The proceeding in the nature of certiorari will be considered first.
The plaintiffs are the Village of Ridgefield Park, a municipal taxing district of Bergen County, and several residents and taxpayers of Ridgefield Park. The residents and taxpayers are suing on their own behalf and also on behalf of all the other taxpayers of Ridgefield Park who are similarly situated. The defendants are the Bergen County Board of Taxation and its members, the County of Bergen and its treasurer, and the assessors of the other 69 *177 municipal taxing districts of Bergen County. This action, in lieu of certiorari, brings before this court for review the 1959 valuation assessments for taxation on the real and personal property in each of the 70 municipalities of Bergen County; the proceedings and action of the Bergen County Board of Taxation respecting its review of the 1959 tax assessment lists of the respective taxing districts of the county; the equalization table and table of aggregates for the year 1959 prepared by the Bergen County Board of Taxation; the "apportionment valuation" of each taxing district required by N.J.S.A. 54:4-49; and the constitutionality and legality of the Bergen County taxes apportioned for the year 1959 against the Village of Ridgefield Park, together with all things touching and concerning the same.
The only taxes involved in this litigation are the Bergen County taxes. Bergen County lies on the westerly side of the Hudson River directly opposite New York City. The picturesque Palisades on the west bank of the Hudson River are in Bergen County. On the top of the Palisades lies the Palisade Interstate Park, and the beautiful Parkway leading from the George Washington Bridge northward into New York State. The westerly end of the George Washington Bridge is in the Borough of Fort Lee, Bergen County. On the westerly side of the county is the Passaic River, and halfway between the Passaic River and the Hudson River is the Hackensack River, which is navigable up as far as the City of Hackensack. The county is criss-crossed by several super-highways: Garden State Parkway, New Jersey Turnpike, State Highway Routes Numbers 4, 46, and 17, as well as several others; and it is also crossed by several railroads. The area of the county is 246.31 square miles of which 236.05 square miles is land. The estimated population of Bergen County as of December 31, 1958 was 728,044. In 1950 its population was 539,139. Bergen County is a rapidly growing county both in population and in industry and commerce.
*178 There are 70 municipalities in Bergen County. They vary in size both in area and in population; and they are very different in their development, location, and also in their natural characteristics. The largest municipality in area, Mahwah, lies in the northwest corner of the county. It has a population of approximately 7,000, and an area of 25.93 square miles. It is primarily a residential and farming community, but it has some industry. The smallest municipality, South Hackensack, lies in the southerly part of the county. It has an area of a little more than half a square mile (.61 of a square mile), and a population of approximately 1,800. It is an important industrial community. Teterboro, also in the southerly part of the county, has a population of 30, but it has many large, modern industries. In Paramus and in the City of Hackensack, there are immense commercial and shopping centers. Leonia, Haworth, Saddle River Borough, Old Tappan and many other municipalities have no industry whatever. They are strictly one-family residential communities. Many of the other communities that are primarily single-family residential in character have some industry and some commercial establishments. Each municipality in Bergen County has its own zoning ordinance restricting and regulating the use of the land within its borders. No two municipalities are exactly alike; and there are great differences between some.
In Bergen County there is valuable river waterfront land: land which lies along the Hackensack River, Passaic River, and Hudson River. There is also valuable land along the super-highways, and land which has important railroad accommodations. There is land available for residential use, for commercial and industrial use, for farming, and for almost any other use. The value of land is determined by its availability and convenience for use. In the case of Cleveland C.C. & St. L.R. Co. v. Backus, 154 U.S. 439, 445, 14 S.Ct. 1122, 38 L.Ed. 1041, 1046 (1894), the United States Supreme Court said:
*179 "The value of property results from the use to which it is put, and varies with the profitableness of that use, present and prospective, actual and anticipated. There is no pecuniary value outside of that which results from such use. The amount and profitable character of such use determines the value."
The value of land in Bergen County depends upon a great many different considerations.

THE LEGISLATURE'S CONTROL OVER TAXATION.
The power of taxation is exclusively a legislative function. In the early case of State (Wagner, Prosecutor) v. Collector of Taxes of Delaware Tp., 31 N.J.L. 189, 195 (Sup. Ct. 1865), the court said that "The power of taxation is beyond a doubt a legislative power, * * *." In the case of Munday v. Assessors of City of Rahway, 43 N.J.L. 338, 346-347 (Sup. Ct. 1881), affirmed 44 N.J.L.
395 (E. & A. 1882), the Supreme Court said:
"And in the latest decision of the Supreme Court of the United States touching this subject, (Meriwether v. Garrett, ubi supra [102 U.S. 472, 26 L.Ed. 197]), all the judges concur in the view that the power of taxation is legislative, that the levying of taxes is not a judicial act, but one which belongs to the legislative department exclusively, to be performed upon considerations of policy, necessity and the public welfare.
The same doctrine has been frequently enunciated in our state courts. State v. Newark [26 N.J.L. 519], 2 Dutcher 519; State, Ruckman, v. Demarest [32 N.J.L. 528], 3 Vroom 528; State, Gaines, pros. v. Hudson Co. Ave. Com'rs [37 N.J.L. 12], 8 Vroom 12. See 2 Dill. on Mun. Corp., § 737, (588), note 2, (3d ed.)"
In the case of State Board of Assessors v. Central R.R. Co., 48 N.J.L. 146, 308 (E. & A. 1886), Mr. Justice Dixon in his opinion said:
"It is laid down that the power to tax belongs to the legislature and its agents exclusively, * * *. The struggle for fairness of taxation must remain in the parliamentary arena, * * *."
*180 In the case of Trustees for Support of Public Schools v. Inhabitants of City of Trenton, 30 N.J. Eq. 667, 678 (E. & A. 1879), the court said:
"Whether taxes be assessed by an officer elected by the people, and called an assessor, or by a commissioner appointed by a municipal body * * * are matters of little importance, which the framers of the constitutional amendments wisely left to the legislative discretion."
In the case of Spencer v. Merchant, 125 U.S. 345, 8 S.Ct. 921, 31 L.Ed. 763 (1887), the Supreme Court of the United States said:
"The power to tax belongs exclusively to the legislative branch of the government. (Cases cited.) In the words of Chief Justice Chase, condensing what had been said long before by Chief Justice Marshall: `The judicial department cannot prescribe to the legislative department limitations upon the exercise of its acknowledged powers. The power to tax may be exercised oppressively upon persons; but the responsibility of the legislature is not to the courts, but to the people by whom its members are elected.' [Cases cited.]"
1 Cooley on Taxation (4th ed.), sec. 64, p. 160, states the law as follows:
"The state government has inherent power to levy taxes. This means the proper department of the state. In the creation of three distinct departments of the government, and the apportionment of power between them, the authority to tax necessarily falls to the legislative. This is manifest from the slightest consideration of what taxation is. It is the making of rules and regulations under which the necessary revenues for all the needs of government are to be apportioned among the people and collected from them. Taxation is a legislative power; and when the people, by their constitutions, create a department of government upon which they confer the power to make laws, the power of taxation is conferred as part of the more general power."
See, also, State v. Branin, 23 N.J.L. 484, 494 (Sup. Ct. 1852); State (Golding, Prosecutor) v. Collector of Borough of Chambersburg, 37 N.J.L. 258, 260 (Sup. Ct. 1874); State Board of Assessors v. Central R.R. Co., 48 N.J.L. *181 146 (E. & A. 1886); Jersey City v. State Board of Tax Appeals, 133 N.J.L. 202, 205 (Sup. Ct. 1945).
No matter how the proceeds of a tax are appropriated, every tax is a state tax which can only be imposed by the authority of the Legislature, subject to the constitutional requirement of uniformity. Camden & Amboy R.R. & Tr. Co. v. Commissioners of Appeal, 18 N.J.L. 71 (Sup. Ct. 1840); State (Camden & Burlington R.R. Co., prosecutor) v. Cook, Col., 32 N.J.L. 338 (Sup. Ct. 1867); Vreeland v. Mayor, etc., of Jersey City, 43 N.J.L. 135 (Sup. Ct. 1881); State Board of Assessors v. Central R.R. Co., 48 N.J.L. 146, 280 (E. & A. 1886).
In every municipality in Bergen County, the Legislature has created the office of municipal assessor, or a board of assessors, for the purpose of valuing property for taxation. The statutes provide for the manner in which the office of municipal assessor, or the members of a board of assessors, shall be filled. In some municipalities, the assessor is appointed by the mayor, or by the governing body of the municipality, and in other municipalities the assessor, or the members of a board of assessors, are elected by the people of the municipality. The statutes also provide for the duties of the assessor, or board of assessors, in each municipality. The municipal assessor, or board of assessors, is the agent of the Legislature for the purpose of valuing property within the municipality for the purpose of taxation. Public Service Electric & Gas Co. v. City of Camden, 118 N.J.L. 245 (Sup. Ct. 1937); Jersey City v. Martin, 126 N.J.L. 353 (E. & A. 1941); Stothers v. Martini, 6 N.J. 560 (1951); Delaware, L. & W.R. Co. v. City of Hoboken, 10 N.J. 418 (1952); Summer Cottagers Ass'n of Cape May v. City of Cape May, 19 N.J. 493 (1955). Property within a municipality can be assessed by taxation only by the assessor, or by the board of assessors, of the municipality. 3 Cooley, Taxation (4th ed.), sec. 1046, p. 2121. An assessment of the value of property within a municipality for the purpose of taxation made by anyone *182 other than by the assessor for that municipality, or by the board of assessors for that municipality, is an illegal and invalid assessment, 3 Cooley, Taxation (4th ed.), sec. 1136, p. 2292.

VALUE BY THE ASSESSORS.
The Legislature of New Jersey specifically requires that:
"All property, real and personal * * * shall be subject to taxation * * * at its true value, and shall be valued by the assessors of the respective taxing districts." N.J.S.A. 54:4-1
In the section of the statute providing for the assessment of the value of personal property for taxation, the Legislature repeats its express requirement that:
"The assessor shall annually ascertain * * * according to the best of his ability and judgment * * * the true value of all the personal property * * *." (Emphasis added) N.J.S.A. 54:4-12.
And, in the section of the statute providing for the assessment of the value of real property, the Legislature once again specifically requires that:
"The assessor shall * * * determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for * * *." (Emphasis added) N.J.S.A. 54:4-23.
N.J.S.A. 54:4-36 of the tax statute requires the assessor to annex to his tax assessment list and duplicate an affidavit in substantially the following form:
"I, ____, assessor of the ____ of ____, do swear (or affirm) that the foregoing list contains the valuations made by me to the best of my ability, of all the property liable to taxation in the taxing district in which I am the assessor, and that I have valued it, without favor or partiality, * * * and have made such deduction only for debts and exemptions as are prescribed by law."
*183 In volumes 3 and 4 of Cooley, Taxation (4th ed.), appear the following statements on the law of taxation:
Sec. 1052. "Assessment is a quasi judicial act * * *." P. 2127.
Sec. 1136. "There is no valid assessment unless the valuation is made by the proper officer or board, * * *." P. 2292.
Sec. 1138. "The assessor, in valuing property, must apply his own knowledge and exercise his own judgment." P. 2293.
Sec. 1146. "* * * the assessor is to value the property according to his best judgment * * *." P. 2308.
Sec. 1601. "Assessors exercise a quasi judicial authority, and when property is to be taxed by value, the value must be determined by their judgment." P. 3181.
In the case of Weyerhaeuser Timber Co. v. Pierce County, 97 Wash. 534, 167 P. 35, 38 (Sup. Ct. 1917), the court said:
"It is well settled that the assessor and board of equalization act in a quasi judicial capacity * * *."
In the case of State (Keeler, Prosecutor) v. Tindall, Collector of Ewing, 36 N.J.L. 97 (Sup. Ct. 1872), the court said that it was the duty of the assessor to determine the actual value of the property to be assessed according to his own independent judgment, and that the determination of the value of property was committed "exclusively to the judgment of the assessor himself." (Emphasis added) In the case of Newark v. Tunis, 81 N.J.L. 45 (Sup. Ct. 1911), affirmed 82 N.J.L. 461 (E. & A. 1911), the Supreme Court said that the tax statutes had put into the hands of the assessors the power and the responsibility of fixing proper valuations on the property subject to taxation. The Court of Errors and Appeals, in its opinion in the case of United New Jersey R. & Canal Co. v. State Board, etc., 100 N.J.L. 131 (E. & A. 1924), expressed itself as follows:
"In the case of Central Railroad Co. v. State Board of Assessors, 49 N.J.L. 1, 9, Chief Justice Beasley, speaking for the Supreme Court, said: `We do not consider that we have the right to alter or annul any of the proceedings of this body of officers, except for palpable error, for it is not to be overlooked that the statute in *184 question expressly declares that these assessors "shall be entitled to use their personal knowledge and judgment as to the value of property," a capacity with which this court is not endowed by the Legislature.' The Legislature must have intended these words in the statute to have a meaning and purpose."
Corpus Juris Secundum states the law to be as follows:
"Generally, the value of property for the purpose of taxation must be ascertained by the legally constituted authorities set up and established for that purpose. In order to constitute a valid assessment of property for taxation, the valuation of the property must be made by the proper assessing officer himself, and in making the estimate he may and must apply his own knowledge and exercise his own judgment; he cannot delegate this duty to another." 84 C.J.S. Taxation § 410, b, pp. 787, 788.
In 3 Cooley, Taxation (4th ed.), sec. 1136, p. 2292, it is stated that "There is no valid assessment unless the valuation is made by the proper officer or board, * * *." And, at p. 2308, section 1146, Cooley states that "the assessor is to value the property according to his best judgment and with honest purpose."
In the case of Colonial Life Ins. Co. of America v. State Board of Tax Appeals, 126 N.J.L. 126 (Sup. Ct. 1941), the court said:
"* * * there is no absolute standard for the admeasurement of the value of land at a given time. The constitutional and statutory test is what the sound judgment of the experienced authority set up for the purpose deems it to be, taking into consideration all factors that reasonably enter into the determination of the question."
With respect to the means or sources of information by which the assessor determines the value of property, the statute is not mandatory, but merely directory. State (Keeler, Prosecutor) v. Tindall, Collector of Ewing, supra; State (Robbins, Prosecutor) v. Treasurer and Collector of Borough of Merchantsville, 38 N.J.L. 212 (Sup. Ct. 1875); Levy v. North Bergen Twp., 10 N.J. Misc. 850 (Sup. Ct. 1932); 3 Cooley, Taxation, sec. 1138, p. 2293.
*185 According to the judicial decisions in New Jersey, the price at which property might be expected to sell for private use is that price which, under normal conditions, a reasonable and prudent buyer would be willing to pay, and which a reasonable and prudent seller would be willing to accept. The circumstances of such a hypothetical sale must be fair in every respect to both purchaser and seller. It must be a situation in which the buyer is not obliged to buy, nor the owner forced to sell. The selling price cannot be determined by the necessities of the buyer, that is, the hold-up price which a necessitous buyer must pay in order to get the property he needs; nor can it be the sacrifice price which a seller is compelled by circumstances to accept without benefit of fair negotiation. In the case of Hackensack Water Co. v. Division of Tax Appeals, 2 N.J. 157 (1949), the court said that "Value for the purposes of taxation has some measure of permanency which renders it secure against general temporary inflation or deflation." In the case of Ithaca Trust Co., Executor, etc. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1928), Mr. Justice Holmes said that the value of property at a given time as used in law depended upon the relative intensity of the social desire for it at that time, and on prophecies of the future. See, also, Central R.R. Co. v. State Board of Assessors, 49 N.J.L. 1, 6 (Sup. Ct. 1886); Newark v. Tunis, 81 N.J.L. 45 (Sup. Ct. 1911), affirmed 82 N.J.L. 461 (E. & A. 1911); New Jersey Bell Tel. Co. v. City of Newark, 118 N.J.L. 490, 494 (Sup. Ct. 1937), affirmed 124 N.J.L. 451 (E. & A. 1940); In re Erie Railroad System, 19 N.J. 110 (1955).
To a very great extent, the price which buyers are willing to pay for property is determined by human impulses, by human wants, hopes or desires, and by physical necessities and comforts. The fair market price of property, in a particular location, is also influenced by the supply and demand for property in that location. The demand for property is a composite of the subjective prices that prospective *186 buyers are willing to pay. The fundamental attribute of property is the future benefits, comfort and enjoyment that arise from its ownership. It is from such intangibles that an assessor must determine the price at which property would sell for in his taxing district between a willing seller and a willing buyer. The process involves the use of the imagination and the consideration of such stuff as dreams are made on. "True value" is incapable of accurate measurement; it is a myth. Nevertheless, as defined by judicial decisions, it is the best standard we have for equalizing property values. There are many legal myths in law which are used every day, and usually serve a good purpose, but, like the "reasonably prudent person," they are sometimes hard to find and often appear about as legitimate as an old maid's children. Although the imagination plays a part in appraising property values, nevertheless an appraisal cannot lose touch with reality, and become a mere soaring fantasy. In the case of Adams Express Co. v. Ohio State Auditor, 166 U.S. 185, 222, 17 S.Ct. 604, 41 L.Ed. 965 (1899), the United States Supreme Court said that "Business men do not pay cash for property in moonshine or dreamland." A reasonably prudent buyer does not rely entirely upon random guessing. The actual buyer himself knows how much he is willing to pay for property, and the price which he is willing to pay is arrived at by his own process of logic and reasoning which ought to consist of a careful analysis of all the facts and circumstances that go to make up value within his knowledge. He should consider the selling price of comparable property, if he knows of any such sales. He should consider the reproduction cost, less depreciation, of any structures, and their degree of obsolescence. If the property is income-producing property, a prudent prospective buyer ought to calculate its value by capitalizing the income. A prudent buyer anticipates the future, and considers the future benefits that he hopes to derive from his ownership of the property. The amount he is finally willing to pay also, to some degree, depends *187 upon the extent of his reliance upon salesmanship; and upon his intuition, or some other mysterious occult feeling that urges and entreats him to acquire that particular piece or parcel of property, or to acquire property in a particular place or neighborhood.
There are 70 municipalities in Bergen County, and each municipality has its own assessor or board of assessors. In some of the municipalities the assessor is appointed by the mayor, or by the municipality's governing body. In other municipalities the assessor is elected by the people of that municipality. But, whether the assessor is appointed or elected, he holds his office at the pleasure of the people in the municipality of which he is the assessor. There are many times when, in order for him to remain in office, he must use expediency in making his valuation assessments. He must, if he wants reappointment, or re-election, favor the wishes of his appointing authority, or the wishes of his constituency, and make his assessments, in the manner of plucking a goose, in such a way that it will cause as little squawk as possible. When that happens, he can give very little consideration to the equal distribution of the tax burden. While a condition of this nature is deplorable, it is, nevertheless, inherent in the taxing system established by the Legislature for assessing the value of property for taxation. In most of the municipalities of Bergen County, assessing property for taxation is a part-time job, and sometimes the regular employer of the assessor is one of his municipality's largest taxpayers.
A few assessors have had experience in the valuation of real property, but there are none who are qualified to determine the value of all the personal property in their respective taxing districts, and only a very few make an effort to determine the "true value" of the personal property. Some assessors are mechanics, plumbers, or clerks; some are professional men; some are business men; and some are housewives. They are chosen from every occupation and walk of life. Except for a very few, the assessors of Bergen *188 County perform their duties ably and conscientiously. If they assess at a ratio of "true value," they do so in the honest belief that they are compelled to do so in order to protect the welfare of their own respective municipalities, and because public sentiment requires them to do so.
The elements of value to be considered in assessing property, and the weight to be given them rest within the judicial discretion of the assessor, and, since there are so many factors that may be considered, almost any honest assessment can be justified. But, notwithstanding the knowledge and experience, or lack thereof, for determining the value of property, real or personal, no two assessors, from different municipalities, value property alike; hence, with the very best of intentions, the valuation assessments as levied in each of the 70 municipalities in Bergen County by its respective assessor would not and could not result in uniformity throughout the County. The selling price of real property differs very widely in each of the different municipalities of Bergen County, and this is true even of real property having the same physical characteristics both as to land and improvements and subject to the same restrictions as to its use. Buying real property is not like buying a package of breakfast food. The heterogeneous character of the taxable real and personal property in Bergen County and its distribution over a large area create extraordinary difficulties in the equalization throughout the county of the valuation assessments. The assessor's knowledge of value, in general, is limited to the value of the property in his own taxing district, and in each of the 70 municipalities in Bergen County, the "true value" of property, real and personal, under the law, is just what the municipal assessor, in his judgment, says it is in his municipality. This situation is well expressed metaphorically by Humpty Dumpty in Lewis Carroll's "Through the Looking Glass," when he said, in a rather scornful tone, "When I use a word, it means just what I choose it to mean  neither more nor less." Alice was greatly confused to think that words could mean so *189 many different things. Assessors are greatly confused to think that "true value" can have so many different meanings. In Bergen County the "true value" of property means at least 70 different things, for there are 70 different municipal assessors, each with an independent judgment as to the value of property in his own taxing district, and each with a different opinion of the meaning of "true value." Many municipal assessors do not even try to determine the "true value" of either the real or the personal property they assess. Some assessors testified that they did not know the meaning of "true value." Some testified that it was impossible to determine the "true value" of any property. Some assessors said that the current selling price of real property in their respective taxing districts represented an inflationary value  one assessor said that the selling price of real property in his taxing district had tripled in the past two years. Some assessors testified that furniture, fixtures, and other appurtenances were frequently included in the selling price of residential property. Some said that the real estate agent's commissions should not be included as part of the selling price because the commissions are not a part of the price a willing seller would accept for his property. Some said that the revenue stamps on a deed were unreliable as an indication of the selling price because frequently more stamps were put on the deed than the law required, and often the property was sold subject to a mortgage so that the revenue stamps only indicated the selling price of the seller's equity. This does not mean that assessors neglect their duties. On the contrary, as I have already said, nearly all the assessors in Bergen County conscientiously and honestly do the very best they can to assess property fairly and equally, and by far most of the assessors are well qualified to perform their duties as to the valuation of real property. The condition is an inevitable condition, which is inherent in the legislative system for assessing property for taxation.

*190 COUNTY BOARD OF TAXATION.
Section 54:3-1 of the Revised Statutes provides for the continuation of the county boards of taxation which were created and established in the several counties for the equalization, revision, review and enforcement of taxes by the act entitled "A supplement to an act entitled `An act for the assessment and collection of taxes,' approved April eighth, one thousand nine hundred and three," approved April fourteenth, one thousand nine hundred and six (L. 1906, c. 120, p. 210), as amended and supplemented. The 1906 supplement aforesaid, as amended and supplemented, provided for the establishment in each county of a "board for the equalization, revision, review and enforcement of taxes" (Suppl. to C.S. 3475, sec. 208-37 p.). Section 54:3-11 of the Revised Statutes provides that the county boards of taxation "shall perform all the duties formerly performed by * * * county boards charged with the review or equalization of tax assessments or tax lists, and all the duties formerly performed by the county boards of assessors." Section 21 of the Tax Act of 1903 provided that the county boards of assessors shall examine the tax duplicates of the various taxing districts and, for the purpose of apportioning the county tax, "add to the total assessed valuation shown on any duplicate such amount as will justly equalize the [county tax] burden" (L. 1903, p. 407; C.S. 5102, sec. 21). This duty of the county boards of assessors was transferred to the county boards of taxation by a supplement to such act (L. 1906, sec. 5, p. 214; C.S. 5119, sec. 37t).
Section 54:3-13 of the Revised Statutes provides that:
"Each county board of taxation shall secure the taxation of all property in the county at its true value, in order that all property, except such as shall be exempt by law, shall bear its full, equal and just share of taxes."
*191 Section 54:4-46 of the Revised Statutes provides that:
"Upon the filing of the assessment lists and duplicates by the assessors with the county board of taxation, the board shall meet for the purpose of examining, revising and correcting the tax lists and duplicates."
Section 54:4-47 of the Revised Statutes, as amended, provides that the county board of taxation may,
"after investigation, revise, correct and equalize the assessed value of all property in the respective taxing districts, increase or decrease the assessed value of any property not truly valued, * * * and in general do everything necessary for the taxation of all property in the county equally and at its true value."
Section 54:4-48 of the Revised Statutes, as amended, requires that:
"The county board of taxation shall enter all changes or additions on the various tax lists and duplicates, and, upon ascertaining the total amount of tax to be raised, fix and adjust the amount of * * * county tax to be levied in each taxing district in the county in proportion to the respective values thereof, * * *."
Section 54:4-55 of the Revised Statutes, as amended, requires the county board of taxation to certify to the collector of the taxing district that the corrected, revised, and completed tax duplicate is a true record of the taxes assessed, and there is a presumption that the valuation assessments as revised and equalized by the county board are correct. Meltzer v. Division of Tax Appeals, 134 N.J.L. 510 (Sup. Ct. 1946).
In 51 Am. Jur. 683, sec. 742, it is stated as follows:
"The fundamental duty and function of a board of equalization is, of course, to adjust the tax valuations of the property in the various tax districts of the state so that no individual tax district or particular class of taxable property is required to bear a disproportionate share of the total tax burden, and in the performance of this function such a board will be presumed to have exercised its powers fairly and reasonably."
*192 In 84 C.J.S. Taxation 929, 930, the principle of law is expressed as follows:
Sec. 490. "* * * county equalization, is intended to produce equality as between the taxing units or districts of such * * * county * * *."
Sec. 491. "Under some statutes equalization between taxing units by the proper county * * * board or officer is an essential part of the assessment procedure. * * * A statutory direction that taxes shall be equalized by an official board as between the different municipal divisions of a county is jurisdictional, and a failure to comply with this requirement renders the tax illegal and void."
In the case of State, ex rel. Trustees of White House School Dist. No. 71 v. Township Committee of Readington, 36 N.J.L. 66, 70 (Sup. Ct. 1872), the court said:
"It is of the very essence of taxation that it should be equal and uniform, and that where the burden is common there should be a common contribution to discharge it. * * * When the amount levied upon individuals is determined without regard to the amount or value exacted from any other individual or classes of individuals, the power exercised is not that of taxation but of eminent domain."
The tax rate is a percentage of the assessed value of the property to be taxed, and the amount of the tax, therefore, is that percentage of the assessed value. If all the property subject to the county tax is assessed at its "true value" then the amount of the tax levied against each property owner should be at the same rate or percentage.
In the case of Town of Union in Hudson County v. Hudson County Board of Taxation, 77 N.J.L. 178 (Sup. Ct. 1908), the court said:
"The duty of the county board of taxation is declared to be to secure the taxation of all property at its true value, and it is given the supervision and control of all the assessors and other officers charged with the duty of the assessment of taxes; to view and inspect, as far as possible, the various assessed properties in the different taxing districts in their respective counties, and to make revision and correction after such view and inspection; to increase or decrease the assessed value of any property not truly valued, *193 and to add to the duplicates any property which has been omitted, `and in general to do and perform all acts and things necessary for the valuation of all property in said county equally and at its true value,' and it is also charged with the duty of reviewing taxes on appeal. P.L. 1906, p. 210. It thus appears that under the statute referred to the county board of taxation has the power to correct and revise the value of all taxable property, and to require the respective assessors to amend their duplicates or lists of taxable property so that they conform to the values fixed by the board."
In the case of Middletown Tp. v. Ivins, 102 N.J.L. 36, 38 (Sup. Ct. 1925), the court said:
"By section 2 of chapter 120 of the Laws of 1906 (P.L., p. 210) which act is a supplement to the Tax Act of 1903 and provides for the establishment of county boards of taxation, it is provided that: `The duty of said boards shall be to secure the taxation of all property in the various counties of this state at its true value, in order that all property, except such as shall be exempt by law, shall bear its full, equal and just share of taxes.' In the performance of this duty, the county board was not only justified but obliged to direct the attention of the respective assessors to the fact that property was not being assessed at its true value, and it makes no difference where this information came from, or how it was obtained."
In the case of Hackensack Water Co. v. Division of Tax Appeals, 2 N.J. 157 (1949), the court said:
"R.S. 54:4-46, 47 requires the County Board of Taxation to examine, revise and correct the assessor's tax list and duplicate, and by virtue of R.S. 54:4-55 it must certify to the tax collector the `corrected, revised and completed duplicate * * * on or before April 1st.' The assessments levied on the property in the assessor's duplicate are not complete until the County Board certifies the assessor's duplicate to the tax collector."
In the case of Borough of Totowa v. Passaic County Board of Taxation, 5 N.J. 454, 460-461 (1950), the court said that R.S. 54:4-46 to 49 requires the county board of taxation:
"to revise, correct and equalize the assessed value of all property in the taxing districts by raising or decreasing the assessed value of any property not truly valued, * * * and in general do everything necessary for the taxation of all property in the county equally and at its true value."
*194 The county board of taxation is an integral part of the administrative machinery of taxation created by the Legislature to secure an equal and just distribution of the burden of taxation. It has the duty to revise, correct, and equalize the assessed value of all property, real and personal, in the county at its "true value." In the performance of its duties, it is acting as the agent of the Legislature. The valuation assessments of both the real and personal property as shown in the assessor's tax lists and duplicates are not final and complete until they have been reviewed and approved by the county board of taxation and certified to the respective municipal tax collectors. Warren v. Hudson County, 23 N.J. Misc. 252 (C.P. 1945), affirmed 135 N.J.L. 91 (Sup. Ct. 1946), affirmed 135 N.J.L. 178 (E. & A. 1947); Middletown Tp. v. Ivins, supra; Hackensack Water Co. v. Division of Tax Appeals, supra; Baldwin Const. Co. v. Essex County Board of Taxation, 16 N.J. 329 (1954); City of Passaic v. Passaic County Board of Taxation, 18 N.J. 371 (1955).
In the discharge of their duties, and in order to carry into effect the provisions of the law respecting the equalization of the valuation assessments throughout the county, the members of a county board of taxation are required, if necessary, to view and inspect any property subject to taxation insofar as possible, R.S. 54:3-15. The county board of taxation has supervision and control over the municipal assessors and may make such rules and other directives which the municipal assessors are required to follow in making their assessments, R.S. 54:3-16. The county board of taxation may examine any municipal assessor, and may make any investigation it may deem advisable in the discharge of its duties to secure the taxation of all property in the county at its true value.
In the case of Newark v. Tunis, 81 N.J.L. 45 (Sup. Ct. 1911), affirmed 82 N.J.L. 461 (E. & A. 1911), the court said that the true value of both real and personal property was its market value as determined by the municipal *195 assessor. I have already pointed out that it is the judgment of the municipal assessor which the Legislature has determined to be the method for determining the true value of the property within a single taxing district. The Legislature has directed, however, that it is the judgment of the county board of taxation which shall determine the true value of all property, real and personal, throughout the county. That is the only way that property can be assessed for a county tax by a uniform rule. It is obvious that the judgment of the municipal assessors could not be used to establish a uniform rule for assessing property throughout the 70 municipalities. If the judgment of the county board of taxation is not the method for determining the "true value" of the real and personal property throughout the county, then there is no uniform method, and the valuation assessments levied on property for the county tax would be unconstitutional. Uniformity in the rules for assessing property cannot exist without uniformity in the manner of determining its value. The individual judgments of 70 municipal assessors of the value of the property within their respective taxing districts do not and cannot comply with the constitutional requirement of uniformity.
An assessment is an official estimate of the values which are to constitute the basis of an apportionment of a tax (3 Cooley, Taxation, sec. 1044, p. 2114). The statutory method designating the county board of taxation to determine the valuation assessments of property throughout the county cannot be delegated to the local assessors (3 Cooley, Taxation, sec. 1134, p. 2290). The county board of taxation must apply its own knowledge and exercise its own judgment (3 Cooley, Taxation, sec. 1138, p. 2293). The tax lists and duplicates after they have been revised, equalized, and corrected by the county board of taxation, are presumed to constitute the judgment of the county board of taxation as to the "true values" of the properties assessed.
In 1 Cooley, Taxation, sec. 11, p. 645, the law as to uniformity throughout a taxing district is stated as follows:
*196 "Uniformity of taxation, as provided by state constitutions, is required throughout the territorial limits of the taxing districts. * * * If the tax is a county tax, it must be uniform throughout the county."

APPORTIONING THE COUNTY TAX.
N.J.S.A. 54:4-41 requires the clerk of the board of chosen freeholders to transmit, each year, to the county board of taxation a statement showing the amount to be raised by taxation during the year for county purposes. The county board of taxation is required to fairly and uniformly apportion that amount among the various taxing districts of the county, N.J.S.A. 54:4-48 and 49. A percentage of the amount to be raised by taxation for the county is apportioned to each taxing district in the proportion that the total "true value" of all the real and personal property in a taxing district bears to the total "true value" of all the real and personal property in the entire county. For the purpose of making such an apportionment, R.S. 54:3-17 requires the county board of taxation to determine the total "true value" of all the taxable real property in each taxing district. The county board prepares an equalization table showing the total assessed value of the real property in each taxing district as assessed by the municipal assessor and as shown on his tax assessment list; the ratio or percentage of "true value" at which the real property of each taxing district is assessed by the municipal assessor; and the "true value" of the real property in each district as determined by the county board. The equalization table, therefore, indicates the ratio or percentage, if any, by which the value of the real property in each taxing district as assessed by the assessor should be increased or decreased in order to make the assessed value of the real property correspond to its "true value."
Assessments are made each year as of October 1, N.J.S.A. 54:4-1. The equalization table has to be made each year. In determining the ratio or percentage of "true value" at which the real property in a taxing district is assessed, *197 the county board considers the sales of property made during the past year in the taxing district. These sales may be of residential property, or of commercial property, or of industrial property, or vacant land or improved land. In the case of Colonial Life Insurance Co. of America v. State Board of Tax Appeals, 126 N.J.L. 126 (Sup. Ct. 1941), the court said that "Evidence of `comparable sales' is ofttimes of questionable probative force, and is rarely, if ever, conclusive"; and in the case of Central R.R. Co. v. State Board of Assessors, 49 N.J.L. 1 (Sup. Ct. 1886), the court said that "It is common knowledge that what a thing has cost is no infallible criterion of its market value." In one municipality, the assessor testified that the land in the residential areas was assessed at 18 percent of its "true value," that commercial land was assessed at 30 percent of its "true value," and that industrial land was assessed at from 60 to 65 percent of "true value." In another municipality, the evidence strongly indicated that the most valuable commercial land was assessed at less than 5 percent of its "true value," and that the land in the residential areas was assessed at from 10 to 15 percent of "true value." In still another municipality, the assessor said that, in his opinion, the assessments on real property ranged from 12 to 40 percent of "true value." In some municipalities it was obvious that the assessments on real property were not equalized, and that the ratio of assessed value to "true value" was different in the different classes of real property. In a taxing district where the value of real property is not uniformly assessed, it is hard to see how it could be possible to ascertain and determine the ratio of assessed value to "true value" by reliance upon a few scattered sales in the taxing district. In such municipalities, the ratio of the assessed value of real property to its "true value" as shown on the equalization table would seem to be unreliable for equalization purposes.
The total "true value" of the taxable real property, as ascertained and determined by the county board of taxation *198 in each taxing district and as shown on the said equalization table, is one of the items used to compute the total "true value" of all the property, real and personal, subject to taxation, in a taxing district, R.S. 54:3-19. The total "true value" of all the taxable personal property, as determined by the county board of taxation in each taxing district, after revising and correcting the municipal assessor's tax lists and duplicates, is another item used to compute the total "true value" of all the property subject to taxation in a taxing district. The third item used to compute the total "true value" of all taxable property in a taxing district is the "true value" of second class railroad property, which is assessed by the Director of the Division of Taxation. These are the three classifications of property  real, personal, and second class railroad property  which are used to compute the total "true value" of all the property subject to taxation in a taxing district. The "true value" of each of the three classes of property is determined in a different manner: the "true value" of the real property is the "true value" shown on the equalization table prepared by the county board of taxation, R.S. 54:3-19; the "true value" of the personal property is that shown on the tax lists and duplicates as revised and corrected by the county board of taxation, N.J.S.A. 54:4-48, 49; and the "true value" of the second class railroad property is determined by the Director of the Division of Taxation, N.J.S.A. 54:29A-19. The sum of the "true value" of these three different classes of property constitutes the total "true value" of all taxable property in a taxing district for the purposes of apportioning the county taxes. The total true value of all taxable property in the county is the sum of the "true value" of all the property in all the taxing districts in the county.
The county tax apportioned to each taxing district is apportioned among the taxpayers of the district on the basis of the valuations assessed and shown on the municipal tax duplicate as certified by the county board of taxation. The county tax rate for raising the county taxes in a municipality *199 is determined by dividing the amount of county taxes apportioned to the municipality by the total value of all taxable property (real and personal) as assessed and shown on the municipality's tax duplicate, plus the assessed value of any second class railroad property in the municipality. The amount of county taxes an owner of property in a municipality must pay is determined by multiplying the assessed value of his property, as assessed and shown on the tax duplicate of his municipality, by the county tax rate for his municipality. The valuation assessments, therefore, must be uniformly assessed and equalized throughout the county, and within each municipality, if the burden of taxation for county purposes is to be fairly and justly distributed among the taxpayers of the county.

THE MEANING OF "UNIFORM RULES" IN THE CONSTITUTION.
The 1875 amendment to the 1844 Constitution required that property shall be assessed for taxation by uniform rules. The 1947 Constitution requires the same:
"Property shall be assessed for taxation under general laws and by uniform rules." Art. 8, sec. 1, par. 1. N.J. Const.
In the case of Baldwin Construction Co. v. Essex County Board of Taxation, 16 N.J. 329, 340 (1954), the court said that "the dominant principle of the new constitutional mandate is equality of treatment and burden. And this was of the essence and spirit of the old Constitution as well." In the case of Trustees for Support of Public Schools v. City of Trenton, 30 N.J. Eq. 667, 677, 678 (E. & A. 1879), the court, in an opinion written by Mr. Justice Depue, said:
"The constitutional provision invoked relates only to the assessment of taxes, and in that respect it concerns only such equalization of the burdens of taxation as will result from the designation of the property which shall be the subjects of taxation, and the *200 apportionment of the taxes thereon under general laws, by uniform rules and upon true valuations. * * * Its object was to secure to the people of the state the equalization of taxation, so far as was practicable, by requiring the imposition of taxes on property by general laws, on the principle of uniformity in the subjects of taxation and in valuations."
In the case of Vreeland v. Mayor, etc., of Jersey City, 43 N.J.L. 135, 138 (Sup. Ct. 1881), the court, in an opinion written by Mr. Justice Reed, said:
"* * * uniform rules of the constitution mean rules which fix a common standard for the assessment of taxes for the state and all its political subdivisions."
In the case of State Board of Assessors v. Central R.R. Co., 48 N.J.L. 146 (E. & A. 1886), Mr. Justice Scudder, in his opinion said, at pages 290 and 291:
"Besides the requirement that property shall be assessed for taxes under general laws, it must also be assessed `by uniform rules.' The word `uniform' is defined as `not variable'; `not different'; `having the same form or manner.' As it stands in this paragraph of the constitution, it means that rules must not be variable in their application to the subject of taxation included in the classification of property. In the Head Money Cases, 112 U.S. 580, 594, S.C. 5 S.Ct. 247, in construing the clause of the constitution of the United States that `all duties, imposts and excises shall be uniform throughout the United States,' the court said: `The tax is uniform when it operates with the same force and effect in every place where the subject is found'; but that `perfect uniformity and perfect equality of taxation, in all aspects in which the human mind can view it, is a baseless dream, as this court has said more than once'; citing In re State Railroad Tax Cases, 92 U.S. 575, 612, 23 L.Ed. 663. The rules for taxation must be uniform as to the property in the class on which it operates. As to railroad property, all property in that class must be assessed for taxes by the same rules."
And Mr. Justice Reed, in his opinion in the same case, at page 325 said:
"Uniformity requires an equality of operation upon all property of the same class. It means that each owner of property of the class shall bear his proportion of the tax levied upon all the property comprising the class."
*201 And Mr. Justice Depue, in his dissenting opinion in the same case, at pages 338 and 341 said:
"It (the constitution) adds the further prescription that the assessment should be by uniform rules and at true values. The object of the constitutional provision was twofold: the equalization of the burden of taxation in the apportionment of taxes for state purposes among the several counties, and of taxes for state and county purposes among the minor taxation districts, in which all taxes are in fact levied and collected; and also the equalization of the burden upon all those who are subject to taxation in the political division for the use of which taxes are laid,  in the state if for state purposes; in the county if for county purposes; and in the minor political divisions, (townships, cities or wards,) if for municipal or local purposes. By uniform rules is meant uniformity in the standard of valuation and rate of taxation. How that uniformity shall be attained will depend upon the purpose for which the particular tax is laid. If it be for state purposes, it must be at the rates of taxation uniformly applied in the state in taxation for state purposes; if for county or municipal purposes, at the same rate at which property is taxed for such purposes. State v. Runyon, 41 N.J.L. 99. As was said by Mr. Justice Dixon, the constitutional provision requires and is satisfied by such regulations as would impose the same percentage of its actual value upon all taxable property in the township for township purposes; in the county for county purposes, and in the state for state purposes. * * *

* * * * * * * *
* * * I have already said that uniformity in the rate of taxation is determined by the territory or political division for the use of which the tax is laid; that the constitution requires the same percentage of actual value upon all taxable property in the township if for township purposes, in the county if for county purposes, and in the state if for state purposes."
To the same effect see Stratton v. Collins, 43 N.J.L. 562 (Sup. Ct. 1881), and Jersey City v. Martin, 126 N.J.L. 353 (E. & A. 1941).
The United States Supreme Court expressed itself as to the meaning of "uniform rule" in the case of Gilman v. City of Sheboygan, 67 U.S. (2 Black) 510, 517, 17 L.Ed. 305 (1862). In that case the court said:
"The court refer with approbation to the Exchange Bank of Columbus v. Hines, 3 O. St., 1. In that case the Supreme Court of Ohio, say: `Taxing is required to be by a "uniform rule"  that is, *202 by one and the same unvarying standard. Taxing by a uniform rule requires uniformity not only in the rate of taxation, but also uniformity in the mode of assessment upon the taxable valuation. Uniformity in taxing implies equality in the burden of taxation, and this equality of burden cannot exist without uniformity in the mode of assessment, as well as the rate of taxation. But this is not all. The uniformity must be co-extensive with the territory to which it applies. If a State tax, it must be uniform all over the State. If a county or city tax, it must be uniform throughout the extent of the territory to which it is applicable. But the uniformity in the rule required by the Constitution does not stop here. It must extend to all property subject to taxation, so that all property may be taxed alike  equally  which is taxing by a uniform rule.'"
The same principle is set forth in 1 Cooley, Taxation, sec. 295, p. 612, as follows:
"At the same time the valuation itself must be uniform in its results. Not only must the rate of taxation be uniform and equal, but also the valuation, * * *. Unequal valuation not only violates the uniformity requirement in the state constitutions, but also the equal protection of the laws provision in the Federal Constitution. * * * The valuation must be the same throughout the taxing district."
In sections 310 and 311, Cooley, Taxation, pp. 644, 645, it is stated that:
"Sec. 310. Taxes may be unconstitutional, as a violation of the equality and uniformity requirement, because of territorial inequality. Uniformity of taxation, as required by state constitutions, extends to territorial uniformity as well as other uniformity. The question of territorial equality arises in connection with several different phases of taxation. First, lack of uniformity throughout the taxing district in that one part of the district is taxed and another part not taxed, or that a higher rate is imposed in one part of the district than in another part.
Sec. 311. Uniformity of taxation, as provided for by state constitutions, is required throughout the territorial limits of the taxing district. * * * If the tax is a county tax, it must be uniform throughout the county."
In 51 American Jurisprudence, sec. 153, p. 203, the same principle is stated as follows:
*203 "One requirement with respect to taxation imposed by provisions relating to equality and uniformity, which has been introduced into some state constitutions in express language, is that taxation must be uniform throughout the political unit by or with respect to which the tax is levied. This means, for example, that a tax * * * for a county purpose must be uniform and equal throughout the county * * *."
In 84 C.J.S. Taxation § 489(b), p. 926, it is stated that:
"The function of equalization is the adjustment of aggregate valuations of property, * * * between the different taxing districts of the same county, so that the share of the whole tax imposed on each * * * district shall be justly proportioned to the value of taxable property within its limits, in order that one * * * district shall not pay a higher tax, in proportion to the value of its taxable property, than another. * * * The object to be accomplished by equalization is to produce relative equality among the several taxing districts."

THE COUNTY BOARD'S EQUALIZATION TABLE AND THE ASSESSOR'S TAX LIST.
Sections 54:3-13, 15, 17, and 19 of the Revised Statutes are part of Title 54, chapter 3. These sections of the statutes all relate to the same thing, and have a common purpose. They are in pari materia. Section 54:3-13 requires the county board of taxation to secure the taxation of all property in the county, both real and personal, at its true value, in order that all property, both real and personal, shall bear its full, equal, and just share of taxes. Section 54:3-17 requires the county board of taxation to determine the ratio or percentage of "true value" at which only the real property appearing on the tax assessment list of each taxing district is assessed by the assessor. This section also requires the county board to prepare an equalization table showing the aggregate value at which only the real property in each taxing district is assessed on a district's tax assessment list, and also showing the aggregate "true value" of *204 only the real property in each taxing district as determined by the county board of taxation. Section 54:3-19 requires the county board of taxation to certify and send to each taxing district in the county a copy of the said equalization table. The county board's certification to the equalization table reads as follows:
"We hereby certify, this (date), that the foregoing table shows the assessed valuations of real property, the ratio of assessments to true value, the percentages by which such valuations have been increased or decreased, and the true valuations as finally determined by us for the year."
Section 54:3-19 also provides that the aggregate "true value" of the real property in each taxing district as determined by the county board of taxation and as shown in the said equalization table shall be used in computing the total ratables of each taxing district for apportioning the county taxes among the various taxing districts of the county.
Sections 54:4-1, 12, 23, 35, 47, 48 and 49 of the Revised Statutes are part of Title 54, chapter 4. These sections of the statute all relate to the same thing, and have a common purpose. They are in pari materia. Section 54:4-1 requires the assessor of each taxing district to assess both the real and the personal property within his taxing district at its "true value." Section 54:4-12 provides the manner in which the assessor shall determine the "true value" of the personal property within his taxing district. Section 54:4-23 provides the manner in which the assessor shall determine the "true value" of the real property within his taxing district. Section 54:4-35 requires the assessor to file his tax assessment list with the county board of taxation. Section 54:4-47 requires the county board of taxation to revise, correct and equalize the assessed value of both the real and the personal property on the assessor's tax assessment list, and "in general do everything necessary for the taxation of all property in the county equally and at its true value." Section 54:4-48 requires the county board of taxation *205 itself to enter all changes on the assessor's tax list, and also to cause each assessor to enter on his tax assessment list the corrected value assessed on both the real and the personal property of each property owner in the taxing district. Section 54:4-49 provides that the aggregate "true value" of the real property in a taxing district as determined by the county board of taxation, and as shown on the equalization table, plus the aggregate "assessed value" of the personal property in the same taxing district as shown on the assessor's tax assessment list after revision and correction by the county board of taxation, shall be known as the "apportionment valuation." The assessed value of second class railroad property in a taxing district as determined by the Director of the Division of Taxation is added to the "apportionment valuation" of a taxing district to determine the total ratables in a taxing district for apportioning the taxes for county purposes, N.J.S.A. 54:29A-19.
Under chapter 3 of Title 54, sections 17 and 19, the county board of taxation is required to determine the aggregate "true value" of only the real property in each taxing district of the county. Under chapter 4, the county board of taxation is required to enter on each assessor's tax assessment list, or cause the assessor so to do, the "true value" of the real property, and also the "true value" of the personal property of each property owner in the taxing district. There are many decisions of the courts of New Jersey defining the meaning of "true value" as that term is used in the New Jersey statutes providing for the assessment and taxation of real and personal property, and wherever the term "true value" is used in relation to the assessment of property for taxation it must have the same meaning. Therefore, whenever the term "true value" is used in chapters 3 and 4 of Title 54, the meaning thereof is the same.
"True value" is an abstraction; hence, the Legislature must prescribe a uniform method for determining the "true value" of all property to be assessed for taxation so that the burden of the tax can be uniformly distributed. *206 The statute provides that the judgment of the county board of taxation shall be the method for determining the aggregate "true value" of the real property in each taxing district as shown on the equalization table prepared by the county board of taxation pursuant to R.S. 54:3-17, 19. The statute also provides that the judgment of the county board shall be the method for the final determination of the "true value" of the personal property in each taxing district as shown on the assessor's tax list and duplicate after revision, correction and equalization by the county board as required by sections 54:4-47, 48. This is the only method provided by law for determining the "true value" of the personal property for distributing the county tax. Since the statutory method for determining the "true value" of both the real property and the personal property in each taxing district is the judgment of the county board of taxation, all the property throughout the county subject to the county tax is assessed for the county tax by a uniform rule as required by the State Constitution.
It is contended by the Attorney General that the personal property assessments as shown on the assessor's tax list and duplicate after certification by the county board of taxation to the tax collector are not, within the intention of the statute, the judgment of the county board of taxation, nor do they reflect the county board's judgment. If the contention of the Attorney General is correct, then there would be no uniform rule for assessing property for the county tax, and the statutes providing for the apportionment of the county tax among the various taxing districts would be unconstitutional. In that event, there would be no law for assessing the county tax.

THE CONSTITUTION.
All acts relating to taxation and the enforcement thereof are subject to the constitutional requirement of equality and uniformity. The constitutional mandate that property shall be assessed for taxes by uniform rules is *207 self-executing. No legislation is needed to give it effect; and anything done in violation thereof is absolutely void and of no effect. Consequently, no tax can be lawfully laid on property which is not determined by a valuation of the property by a uniform rule. State (North Ward National Bank of Newark, Prosecutor) v. Mayor, etc., of City of Newark, 39 N.J.L. 380 (Sup. Ct. 1877), reversed on other grounds 40 N.J.L. 558 (E. & A. 1878); Taylor v. Smith, 50 N.J.L. 101 (Sup. Ct. 1887); Sisters of Charity of St. Elizabeth v. Collector of Chatham Tp., 51 N.J.L. 89 (Sup. Ct. 1888), reversed on other grounds 52 N.J.L. 373 (E. & A. 1890); Cooper Hospital v. Camden, 68 N.J.L. 691 (E. & A. 1902); Mayor, etc., of Jersey City v. Vreeland, 43 N.J.L. 638 (E. & A. 1881); Kraus v. City of Cleveland, 96 N.E.2d 314, 89 Ohio App. 504 (Ct. App. 1950), appeal dismissed 97 N.E.2d 549, 155 Ohio St. 98 (Sup. Ct. 1951). In the case of State Board of Assessors v. Central R.R. Co., 48 N.J.L. 146 (E. & A. 1886), Mr. Justice Parker said on page 298, that the taxing power was "controlled by constitutional limitations, which the people have adopted."
In 84 C.J.S. Taxation § 22, pp. 76, 77, appears the following statement:
"Generally equality and uniformity of taxation are necessary under the provisions of the constitutions of many of the states * * *. Such requirements lie at the foundation of the taxing power of the state. * * * A constitutional requirement of equal and uniform taxation substantially covers the ground of the due process and equal protection clauses of the federal Constitution and state constitution, that is, the requirements of these provisions in tax matters are substantially similar, and what violates one of these provisions will contravene the other."
In the case of Hamilton v. Adkins, 250 Ala. 557, 35 So.2d 183, 184 (Sup. Ct. 1948), certiorari denied 335 U.S. 861, 69 S.Ct. 133, 93 L.Ed. 407, the court said:
"It seems clear that the constitutional principle of uniformity of taxation may be infringed by the method of administration of a *208 property tax statute, even though the statute is fair on its face. Discrimination in the assessment or valuation by administrative officers may result in violation of the equality clause of the Fourteenth Amendment to the Federal Constitution. * * *
To sum up the situation, the effect of the equal protection clause of the Federal Constitution and state uniformity requirements are substantially similar and what violates the one will contravene the other. 51 Am. Jur. sec. 169, p. 225."
In the case of Commonwealth v. Girard Life Ins. Co., 305 Pa. 558, 158 A. 262, 83 A.L.R. 460 (Sup. Ct. 1932), affirmed Girard Life Ins. Co. v. Commonwealth of Pennsylvania, 287 U.S. 570, 53 S.Ct. 94, 77 L.Ed. 501 (1932), the Supreme Court of Pennsylvania said:
"Our Constitution enjoins that `all taxes shall be uniform, upon the same class of subjects.' The federal Constitution directs, `Nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.' As applied to questions of taxation, the constructions of the two enactments run together. That which would violate one would generally contravene the other."
See also, Cumberland Coal Co. v. Board of Revision, 284 U.S. 23, 52 S.Ct. 48, 76 L.Ed. 146 (1931); Southern R. Co. v. Watts, 260 U.S. 519, 43 S.Ct. 192, 67 L.Ed. 375 (1923); 1 Cooley, Taxation, sec. 295, pp. 614, 615.
In the case of In re Opinion of the Justices, 332 Mass. 769, 126 N.E.2d 795, 800 (Sup. Jud. Ct. 1955), the court, after referring to a provision in the State Constitution, said:
"These words forbid the imposition upon one taxpayer of a burden relatively greater or relatively less than that imposed upon other taxpayers. If this is not the meaning of these words they mean nothing at all. Words of the Constitution cannot be ignored as meaningless. * * *
Question 4 inquires whether the proposed act would violate the Fourteenth Amendment to the Constitution of the United States. That amendment provides in part that no State shall `deny to any person within its jurisdiction the equal protection of the laws.' Equal protection of the laws requires of course that all persons in the same category and in the same circumstances be treated alike. In Cumberland *209 Coal Co. v. Board of Revision of Tax Assessments, 284 U.S. 23, at page 28, 52 S.Ct. 48, at page 50, 76 L.Ed. 146, the court says, `It is established that the intentional, systematic undervaluation by state officials of taxable property of the same class belonging to other owners contravenes the constitutional right of one taxed upon the full value of his property.'" (Citing cases.)
In the case of State Board of Assessors v. Central R.R. Co., 48 N.J.L. 146, at page 355 (E. & A. 1886), Mr. Justice Depue, in his dissenting opinion, said:
"The construction of constitutional law is not for a day or an occasion, and the introduction of an erroneous principle of construction is an abiding wrong that will work incalculable mischief."
In the early and celebrated case of Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60 (1803), the United States Supreme Court said:
"The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection. * * * The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation if the laws furnish no remedy for the violation of a vested legal right. * * * That the people have an original right to establish, for their future government, such principles, as, in their opinion, shall most conduce to their own happiness is the basis on which the whole American fabric has been erected. * * * To what purpose are powers limited, and to what purpose is that limitation committed to writing, if these limits may, at any time, be passed by those intended to be restrained? The distinction between a government with limited and unlimited powers is abolished, if those limits do not confine the persons on whom they are imposed, and if acts prohibited and acts allowed, are of equal obligation. * * * The constitution is either a superior paramount law, unchangeable by ordinary means, or it is on a level with ordinary legislative acts, and, like other acts, is alterable when the legislature shall please to alter it.
If the former part of the alternative be true, then a legislative act contrary to the constitution is not law: if the latter part be true, then written constitutions are absurd attempts, on the part of the people, to limit a power in its own nature illimitable."
*210 In the case of Fairbank v. United States, 181 U.S. 283, 21 S.Ct. 648, 45 L.Ed. 862 (1901), the United States Supreme Court said:
"* * * if written constitutions are to be regarded as of value, the duty of the court is plain to uphold the Constitution, * * *."
In 16 C.J.S., Constitutional Law § 3, pp. 23 and 25, it is stated that a constitution serves to protect the people against arbitrary power, and that the constitution of a state is the supreme law within the realm and sphere of its authority. If our State and Federal Constitutions are not worthy of being upheld, then neither are the laws, nor the faith, principles, and ideals which we are proud to call the American way of life. But, if the constitution is to stand, then every expediency, thing, and political interest must conform to constitutional requirements, or else American freedom will be forced to surrender to the menacing challenge of some other belief, or mode of living. "In this country the most reliable source of public policy is to be found in the federal and state constitutions." 3 Sutherland, Statutory Construction (3d ed.), sec. 5904, p. 131.

CONCLUSIONS.
The statutes of New Jersey require that all taxable property  real and personal  shall be assessed for taxation for the support of the county government at its "true value." The Constitution of New Jersey requires that all taxable property  real and personal  shall be assessed for taxation by uniform rules.
The Bergen County Board of Taxation apportioned the amount to be raised by taxation for the support of the Bergen County government for the year 1959 among the 70 municipalities of Bergen County. The apportionment was made on the basis of the aggregate tax ratables in each of the 70 municipalities. The Bergen County Board of Taxation used the aggregate "true value" of the real property *211 in computing the aggregate tax ratables in each municipality; but it used only a small percentage of the aggregate "true value" of the personal property. The Bergen County Board of Taxation determined by its own judgment the aggregate "true value" of the real property in each municipality; but it did not determine the aggregate "true value" of the personal property. It used the values assessed on personal property by the municipal assessor in each municipality, and took the aggregate of those assessed values.
In some taxing districts, some classes or kinds of personal property subject to taxation were not assessed at any value. It was common practice in some taxing districts not to assess the household goods of tenants. In most instances, the "true values" of the personal property were merely the random guesses of the municipal assessors, or the values given them by the property owners, and the personal property was then assessed at a small percentage of those values. According to the testimony of the municipal assessors themselves, the ratio or percentage of the assessed value of the personal property to its presumed "true value" varied widely in the different taxing districts, and even within a single district. In one municipality, according to the testimony of the assessor, the assessed value was 7 percent of its presumed "true value." In other municipalities the percentages of the assessed values to the presumed "true values" were 10 percent, 13 percent, 15 percent, 20 percent, 25 percent, et cetera. There was a complete lack of uniformity in assessing the value of personal property as between the taxing districts, and, in general, within each district. In the Village of Ridgefield Park, however, both the real and the personal property were assessed at their full "true value," according to the best of the assessor's ability and judgment, after a diligent inquiry and investigation had been made.
The total assessed value of personal property in Bergen County, for the year 1959 was $135,847,194. Its "true value," according to the testimony of the assessors, was $513,208,044. Its "true value," according to the Ninth Report of the *212 Commission on State Tax Policy, was $946,709,000. The evidence clearly demonstrated the effect on the distribution of the county tax by using the values of personal property as assessed by the municipal assessors at a percentage of "true value." It indicated by this demonstrative evidence that Ridgefield Park was apportioned $15,653.94 more of the Bergen County tax than it would have been if the aggregate "true value" of the personal property had been used in making the apportionments instead of a percentage thereof.
It is obvious that the residential districts of Bergen County received a greater proportion of the 1959 county taxes than they should have received, and that the real property owners in Bergen County  especially the home owners  are carrying a much larger percentage of the burden of the Bergen County taxes than is intended by the statutes.
The Commission on State Tax Policy in its Ninth Report to the Governor and to the Legislature said:
"The commission concludes that 100 per cent assessment of real and personal property would result in reductions in the burden on residential property. Such a reduction would be attributable, in the great majority of taxing districts, to a shift of the tax burden to business personal property which is now taxable but is not taxed or taxed relatively lightly as compared with real estate."
The Sixth Report of the Commission on State Tax Policy of New Jersey, which was submitted to the Governor and to the Legislature in February 1953, states that property valuations and assessments in New Jersey are marred by the grossest inequities, and that the taxation on personal property in New Jersey is both a "scandal and a hazard." The report is entitled A Century of Inequities in the taxation of property in New Jersey.
This practice of discrimination in favor of the personal property owners against the real property owners in Bergen County has been habitual, and the undervaluation of the personal property has been deliberate and intentional. This manner of distributing the county tax among *213 the county taxpayers is obviously a violation of the Constitution of New Jersey and also of the Constitution of the United States.
In 51 Am. Jur., sec. 170, p. 225, the constitutional principle involved is stated as follows:
"In accordance with the general principle that equal protection of the laws may be denied by the improper administration of a constitutional statute, it is well established that the constitutional principle of uniformity of taxation may be violated by the manner in which a property tax statute, fair on its face, is administered. Thus, inequality or discrimination in the assessment or valuation by administrative officers of particular kinds of property or the property of particular taxpayers may result in a violation of the requirements of the equal protection clause of the Fourteenth Amendment to the Federal Constitution or the equality and uniformity provisions of the state constitutions."
And at page 229 in 51 Am. Jur., sec. 172, it is stated that the intentional valuation of a particular kind of property at a higher percentage of its actual value than that at which other kinds of property are valued, or the assessment of the property of certain taxpayers by a different method from that which is employed for other taxpayers of the same kind is unlawful, and cannot be upheld.
In 1 Cooley, Taxation, sec. 302, pp. 636, 637, the following principle of law is stated:
"The act of tax officers in habitually assessing one class of property at its full value and another class of property at less than its full value, although not warranted by any statute, violates the constitutional requirement as to uniformity."
The United States Supreme Court followed this constitutional principle of law quoted from Cooley, Taxation, in the case of Cummings v. Merchants' Nat. Bank of Toledo, 101 U.S. 153, 25 L.Ed. 903 (1880).
The Bergen County Board of Taxation prepared the 1959 equalization table as required by R.S. 54:3-17. The table shows the ratio or percentage of the "true value" of the real property in each taxing district at which it was assessed. *214 The table, therefore, indicates the percentage by which the assessed value of the real property should be increased or decreased in order to correspond to its "true value." The county board ascertained the ratio or percentage of the "true value" of the real property by a uniform formula or method which it used for every taxing district of the county. By the use of this formula, the ratio or percentage at which the real property in Ridgefield Park was assessed of its "true value" was approximately 107.35 percent. But, the Bergen County Board of Taxation did not show this ratio or percentage on the equalization table for Ridgefield Park. Instead, it showed Ridgefield Park's aggregate assessed valuation to be the aggregate "true value" of the real property. The aggregate assessed value of the real property in Ridgefield Park was $57,495,200. If the county board of taxation had used the same formula or method for determining the ratio or percentage of "true value" at which the real property in Ridgefield Park was assessed for the year 1959 as it used for every other taxing district, it would have shown on the equalization table that the aggregate "true value" of the real property in Ridgefield Park was approximately $53,756,262. As a result of this failure to use a uniform method for determining the aggregate "true value" of the real property in Ridgefield Park, the village was discriminated against, and was forced to pay between $10,000 and $11,000 more in county taxes than it should have been required to pay.
The taxing district for the apportionment of the county tax is the county. The method used by the county board of taxation for apportioning the county tax must be applied uniformly throughout the county. There cannot be two rules of apportionment for the same tax in the same district; if there could be, there might be any number, and in effect there would be none at all. 2 Cooley, Taxation (4th ed.), sec. 541, p. 1189.
If the provisions of the statute which provide for assessing the value of property for the county tax and apportioning that tax among the various municipalities of the *215 county is constitutional, then the law has not been complied with insofar as the Village of Ridgefield Park is concerned. Its improper administration in the manner shown in this case is unconstitutional insofar as it affects the Village of Ridgefield Park. If, on the other hand, the provisions of the statute do not provide a method for assessing property for the county tax by a rule or method which is applicable uniformly throughout the county, or if it is impossible to administer the law in assessing property for the county tax in compliance with the constitutional requirements of uniformity, then the law itself is unconstitutional. Whatever the situation may be, the Bergen County tax apportioned to the Village of Ridgefield Park is unconstitutional and void for the reasons heretofore given. Therefore, the Bergen County equalization table for the year 1959, insofar as it affects the Village of Ridgefield Park will be set aside as unconstitutional and void; the Bergen County table of aggregates for the year 1959, insofar as it affects the Village of Ridgefield, will also be set aside as unconstitutional and void; and the Bergen County taxes apportioned to the Village of Ridgefield Park for the year 1959, together with all things touching and concerning the same insofar as they affect the Village of Ridgefield Park will be set aside as unconstitutional and void.

MANDAMUS.
It has been previously pointed out that, under the statutes of New Jersey, the value at which property is assessed for taxation is determined by the judgment of the municipal assessors and the judgment of the county boards of taxation. Whenever the judgment of the county board disagrees with that of the assessor, the judgment of the county board is superior to that of the assessor; and it is the judgment of the county board which determines the "true value" of the property assessed. The assessment of *216 property at its "true value" is a quasi-judicial act, 3 Cooley, Taxation (4th ed.), sec. 1052, p. 2127; 4 Cooley, Taxation (4th ed.), sec. 1601, p. 3181; Weyerhaeuser Timber Co. v. Pierce County, supra; Colonial Life Insurance Co. of America v. State Board of Tax Appeals, supra. In the early case of United States v. Lawrence, 3 Dall. (U.S.) 42, 1 L.Ed. 502 (1795), the United States Supreme Court said that it had "no power to compel a judge to decide according to the dictates of any judgment but his own." In the case of Ex parte Denver and Rio Grande R. Co., 101 U.S. 711, 25 L.Ed. 872 (1879), the United States Supreme Court held that the writ of mandamus is never used to control the discretion and judgment of an inferior tribunal acting within the scope of its judicial authority. In the case of Gibbs v. Hampden County Com'rs., 19 Pick. (Mass.) 298 (Sup. Jud. Ct. 1837), the plaintiff was seeking a writ of mandamus to compel the assessment commissioners to abate his taxes. The court said "although it is within the province of this Court to require the commissioners to decide the question, yet we have no power to decide it for them or to determine what decision they shall make. No judicial officer, in determining a matter legally submitted to his discretion, can ever be required to be governed by the dictates of any judgment but his own." In Sears v. Vary, 208 Mass. 208, 94 N.E. 467 (Sup. Jud. Ct. 1911), the court held that assessors will not be compelled by mandamus to abate a tax on personalty in the absence of a showing that they have not used their best judgment in assessing the tax. The court in its opinion said, "There is no reason to doubt that they (the assessors) decided the questions raised by the application in accordance with their view of the law and the facts before them. This court has no right to command them to decide otherwise. (citing cases) This is so because it is their right and duty to decide according to their own best judgment." In 4 Cooley, Taxation (4th ed.), sec. 1601, p. 3181, it is stated that: "No court can decide for them (assessors) what their judgment ought to be." And, in *217 3 Cooley, Taxation (4th ed.), sec. 1143, p. 2296, the principle of law involved is stated as follows:
"Valuation is in its nature a judicial act, and the assessors in making it are entitled to the customary protection which the law accords to officers exercising corresponding judicial functions. The person injured by their errors, committed without fraud or malice, has in general only such remedy as the statute may afford him. And in no proceeding is one to be heard who complains of a valuation which, however erroneous it may be, charges him only with a just proportion of the tax."
In the case of People ex rel. Jones v. Webb, 256 Ill. 364, 100 N.E. 224, 227 (Sup. Ct. 1912), the court was considering a petition for mandamus by a taxpayer seeking to compel the board of tax review to list for taxation certain omitted personal property from the tax lists. The court said:
"Mandamus does not create the duty or confer the power to perform it, but is designed to coerce action along the lines marked out by the law for the person against whom it is directed. It does not issue to compel action in matters about which the officer has a discretion as to whether he will act or not, but it may issue for the purpose of compelling action one way or the other in a matter in which the officer has a discretion as to which way he will act. It is sometimes said that the writ will not issue to compel the performance of a judicial duty. This statement is not quite accurate. A judicial duty may be enforced where the right is clear and the judicial officer, if he obey the law, has no discretion but must do a particular thing which the law requires of him. A better statement of the law seems to be that while a judicial officer, or one exercising discretion or authority, may be compelled to act and to proceed to the performance of his duty, he cannot be controlled in his judgment or compelled to exercise his discretion in a particular manner by means of this writ. Cooley on Taxation, p. 1352, and cases there cited. Applying these general principles, the law is well settled that, where assessing officers fail and neglect in the performance of their duty, they may be compelled to act, but, where it is necessary to exercise judgment and discretion as to valuations and the like, the court will not decide such questions for the officers and direct by mandamus what the judgment is or should be. In other words, officers whose duty it is to value and assess property may be compelled by mandamus to proceed in the discharge of their duties and make an assessment, but the court would not undertake to give *218 directions as to the valuation that ought to be placed upon the property to be assessed, unless the valuation was so low as to show that the assessing officer was making a fraudulent under-valuation."
It is practically impossible, therefore, to equalize the valuation assessments on property, real and personal, throughout Bergen County by ordering each of the 70 municipal assessors to assess property within their respective taxing districts at its "true value." Furthermore, even if the equalization of property values might result from such an order, the method thus employed to obtain equalization would not be in accordance with the constitutional requirement that property shall be assessed by a uniform rule; equalization by that method would happen purely by chance.
Miss Moody, the administrative clerk of the Bergen County Board of Taxation, has been with the board for 42 years. She is familiar with the administrative practice and records of the county board, and she is a very competent employee. She testified that the statute did not give sufficient time for the county board of taxation to equalize the personal property assessments throughout Bergen County. She said that the board was capable of equalizing the valuation assessments on personal property throughout the county provided it was given sufficient time to do so and an adequate budget. She said that the Bergen County Board of Freeholders had refused the county board of taxation sufficient money for it to properly perform its duties. In addition to these factual obstacles, the Attorney General of New Jersey advised the Bergen County Board of Taxation that the statutes do not require it to equalize the personal property assessments. There is no evidence that the Bergen County Board of Taxation is unwilling to equalize the valuation assessments on personal property. If, therefore, an order should be made directing the Bergen County Board of Taxation to equalize the valuation assessments on personal property throughout the county, then there should also be an order directing the Bergen County Board of Freeholders to supply the county board of taxation with sufficient funds *219 to perform that duty. However, if the statutes do not permit the Bergen County Board of Taxation sufficient time to equalize the personal property assessments, i.e., that it is impossible to administer the law in accordance with the constitutional requirement, then the law is unconstitutional, and the courts will not order the enforcement of an unconstitutional law.
If the statutes provide an appeal to the Division of Tax Appeals from the failure of the Bergen County Board of Taxation to equalize the valuation assessments on personal property throughout the county, then the writ of mandamus should not issue to compel the county board to equalize the personal property assessments because there is another full and adequate remedy provided by statute. Consolidated Cigar Corporation v. Brunner, 133 N.J.L. 77 (Sup. Ct. 1945). Under justifiable circumstances, it has been held that the court may issue a writ of mandamus to compel the county board to use their honest discretion and judgment to equalize assessments on personal property, 84 C.J.S. Taxation § 581, p. 1156. But, the court must consider the consequences of granting the writ, and whether or not the writ can be enforced. In the case of Evans v. Villani, 19 N.J. Super. 86 (App. Div. 1952), the court said:
"The courts will act in view of all of the facts and circumstances, according due consideration to the equities, the efficacy or futility of the judgment and to whether the mandatory judgment will conduce to substantial justice or, on the contrary, tend toward injustice, hardship, or oppression. * * * They will particularly envision the public interests which may be implicated."
The Constitution of New Jersey provides that:
"The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, * * *." Art. III, par. 1.
It is not the duty of the judicial branch of the government to supervise the administration of the laws. *220 That function should be performed by the executive branch of the government. A member of a county board of taxation who shall willfully or intentionally fail, neglect or refuse to comply with the Constitution or laws of this State relating to the assessment and collection of taxes, or to perform a duty prescribed by the statute, may, after a proper hearing, be dismissed by the Governor, R.S. 54:3-28. In the case of Wayman v. Southard, 10 Wheat. 1, 22-25, 6 L.Ed. 253 (1825), the United States Supreme Court said "that the legislature makes, the executive executes, and the judiciary construes the law; * * *, and the precise boundary of this power is a subject of delicate and difficult inquiry, into which a court will not enter unnecessarily."
There is much confusion in our State regarding the assessment of property for the purpose of taxation. This confusion stems both from the statutes and from the administration of the law; and flagrant injustice has resulted. In its Sixth Report the Commission on State Tax Policy said:
"In this sense, personal property is not now and never has been truly a part of the general property tax base. But the letter of the law which places it within that base has caused negotiation to be substituted for taxation, and an unhealthy atmosphere of caprice to take the place of clear-cut official responsibility. The result, to be expected under such conditions, has been discriminatory, unequal and sometimes arbitrary assessments."
The present confusion can only be aggravated if the judicial branch of the government assumes any of the duties and responsibilities which the Constitution has delegated to either the executive or the legislative branch. The inequities in taxation would not be corrected. The following jingle, although jocular, nevertheless expresses the real gravity (it is no laughing matter) of the unsettled conditions existing in New Jersey regarding the assessment of property for taxation:
"Taxes milks dry, but, neighbor you'll allow Thet havin' things onsettled kills the cow."
*221 This part of the suit which seeks a mandamus judgment against the Bergen County Board of Taxation will be continued until Friday, June 24, at 10 o'clock in the forenoon. I would like the attorneys to file with the court, on or before June 3, briefs on the questions raised in this part of the opinion on the legal right or equity of the court to order the Bergen County Board of Taxation to equalize and secure the assessment of personal property at its "true value." I also would like the attorney for the plaintiff to specify particularly, on or before June 3, what he thinks this court should order the Bergen County Board of Taxation to do.